# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

---

## Gillespie, Appellant v. Iseman.

210
1222   503

*Contract—Lease—Natural gas—Construction contract by parties.*

Where a natural gas lease provides that the lessee shall equip the house of the lessor for the use of natural gas and shall furnish gas free of cost, the lessee is not bound to furnish gas free for light outside of the house and not connected in any way with the house.

Where the lessor and his immediate predecessor in title have acquiesced in this construction of the lease, a subsequent owner will not be permitted more than six years after the date of the lease to place a different construction upon it.

Courts will, if they can, give to the contracts of parties the exact effect which the parties themselves gave to them, and interpret them just as they interpreted them.

Argued Oct. 11, 1904. Appeal, No. 135, Oct. T., 1904, by plaintiff from judgment of C. P. Armstrong Co., March T., 1903, No. 215, on verdict for defendant in case of E. N. Gillespie to use of the Enterprise Natural Gas Co. v. Simon Iseman. Before MITCHELL, C. J., DEAN, FELL, BROWN, POTTER and THOMPSON, JJ. Reversed.

Assumpsit to recover the value of natural gas.
The facts are stated in the opinion of the Supreme Court.

The court charged in part as follows:
[So we submit to you the testimony of Robert W. Shoop while on the witness stand, as to what connection he had with

this company, and what he did and said when talking to Mr. Iseman about this matter, to decide whether or not this gas company clothed him with apparent authority to act in their behalf.] [4]

Now gentlemen of the jury, I submit that testimony to you to say whether or not Robert W. Shoop was clothed by this plaintiff company with apparent authority to speak for it. If you find, from all the evidence in this case, that he was, then his declarations would be binding upon the plaintiff company.

[If you find that Robert W. Shoop was clothed with apparent authority by this company to make this declaration and that he did make it, and on the faith of that declaration Mr. Iseman used this gas, believing that he would not have to pay for it, then the plaintiff cannot recover.] [5] But if you believe the testimony of Robert W. Shoop and his father, that they gave no such consent, then Mr. Iseman would not be exonerated from paying for the gas he thus used.

[The second ground of defense that Mr. Iseman sets up is that under the terms of this contract he was not bound to pay for using gas in this outside light. The contract, or that part of it, reads as follows : " It is further agreed that the party of the second part shall equip the house of the party of the first part for the use of natural gas, and shall furnish gas .free of cost, providing gas is found in paying quantities." The material part of that is this : " shall furnish gas free of cost,"— how furnish it and where? Now if that was a clear expression, for instance, if it said that Mr. Iseman was to use gas inside of his dwelling house, or that he should use gas only in his cook stove, or that he should use gas in four dwelling-house fires, then the contract would be plain and the court would have to construe the contract and could not allow the jury to say what the contract meant. But, in the opinion of the court, this contract is ambiguous. It says " shall furnish gas free of cost," but does not say whether inside or outside of the house.] [6]

[As we understand the law, it is for the jury to say, taking into consideration the situation in which the parties stood and the things for which they would naturally provide, and taking into consideration the condition in which Mr. Iseman, or rather Mr. Meenan at that time lived, and the nature of his farm and

his buildings on the farm, and the way in which people in the country ordinarily use natural gas, and what wants and necessities Mr. Meenan was providing for, how did the parties understand this contract in the light of surrounding circumstances at that time.] [7]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* among others were (4–7) above instructions, quoting them.

*James H. McCain*, with him *W. J. Christy*, for appellant.— The written contract sued upon in this case is not such a one as should have been referred to the jury to construe: Carson v. Hosiery Co., 15 Pa. Superior Ct. 476; Dunn v. Rothermel, 112 Pa. 272; Reaney v. Culbertson, 21 Pa. 507; Sparks v. Pittsburg Co., 159 Pa. 295; Kendall v. Klapperthal Co., 202 Pa. 596; Wright v. Gas Co., 2 Pa. Superior Ct. 219.

*Calvin Rayburn*, with him *S. H. McCain*, for appellee.—It is for the court to decide what the instrument means, but the application of the meaning is a question of fact, when it is rendered doubtful by parol evidence what was the subject about which the parties contracted: Beatty v. Lycoming County Insurance Co., 52 Pa. 456; Erie Forge Co. v. Penna. Iron Works Co., 22 Pa. Superior Ct. 550; McCullough v. Wainright, 14 Pa. 171.

Words in a contract which have no fixed technical meaning should be taken in their natural and obvious sense: Bole v. New Hampshire Fire Ins. Co., 159 Pa. 53; National Dredging Co. v. Mundy, 155 Pa. 233; Tiley v. Moyers, 43 Pa. 404; Ford v. Buchanan, 111 Pa. 31.

OPINION BY MR. JUSTICE POTTER, November 4, 1904.

On February 21, 1893, Patrick J. Meenan being the owner of a farm in Armstrong county, leased the premises for the production of oil and gas to E. N. Gillespie, who afterwards transferred the lease to the Enterprise Natural Gas Company. Some two years and nine months after the making of the lease, Mr. Meenan sold the farm to John Fullerton, who took possession of the place on November 22, 1895. He re-

mained there about three and a half years, until May, 1899, when he sold the place to the present defendant, Simon Iseman.

The lease for oil and gas purposes, made by Meenan in 1893, contained the following clause : " It is further agreed that the party of the second part shall equip the house of the party of the first part, for the use of natural gas, and shall furnish gas free of cost, providing gas is found in paying quantities." A gas line was run to the house, it being then owned by Mr. Meenan, and the house was equipped for burning natural gas, by the company, in accordance with the contract, apparently to the entire satisfaction of both parties. The arrangement continued throughout the period of ownership by Meenan, and that of his successor in the title, John Fullerton. The latter testifies that he never used an open light on the farm, and that the defendant company would not permit him to do so ; but that he did obtain from the company special permission to use the gas under a bake oven and an outside kettle. But when the present defendant, Simon Iseman, purchased the farm, he claimed the right to have gas furnished to him for an additional light outside of the house, and between the house and spring ; not connected in any way with the house, but to be used only as an open air light. He had the connections made for such a light and used it for a considerable time. To recover for the value of the gas used by the defendant in this outside light, this suit was brought. The trial judge was of the opinion that the clause in the contract defining the extent of the right to use gas, was ambiguous, and he submitted the question to the jury, for them to determine whether or not, under the contract, the defendant had the right to use gas in an outside light. We cannot agree with the learned court below that the clause in question is ambiguous. To us, its meaning does not seem doubtful or uncertain. The wording of the agreement is " that the party of the first part shall equip the house of the party of the second part for the use of natural gas, and shall furnish gas free of cost." Manifestly the plain meaning and intent is, that the company shall furnish gas free for that which it was to equip for its use. Not that it was to equip one thing, the house, for the use of gas, and then furnish the gas for use in some other place not mentioned and not so equipped by it. The defendant might as well have contended that the clause

would cover the use of gas in his barn, or to light up his driveway from the road to the house. There was no such agreement. It was the house alone which was to be equipped, and evidently, under the language of the agreement, the use of natural gas free was to be supplied to that for which the equipment was to be furnished.

No other idea as to the construction of the contract seems to have been entertained by the parties who made it, or by Mr. Fullerton who succeeded Mr. Meenan in the ownership of the farm. It was not until more than six years had passed after the making of the lease, that the present defendant, who was not a party to it when it was made, sought to put a construction upon it, differing from that which had until then been accepted and acted upon by the parties to it.

" Courts will if they can, give to the contracts of parties the exact effect which the parties themselves gave to them, and interpret them just as they interpreted them : " Kendall v. Klapperthal Company, 202 Pa. 596 (609). Nor will they " assume to understand the interests of contracting parties better than the parties themselves : " Phillips v. Blatchford, 137 Mass. 510. The first specification of error alleges that the court erred in not affirming without qualification the plaintiff's final point, as follows : " Under the lease offered in evidence, and under the evidence and pleadings in this case, the defendant is entitled to gas only for the dwelling house, as fitted up by the plaintiff company, after gas was found in paying quantities on the land." We think this point should have been squarely affirmed, and this assignment of error is therefore sustained. The trial judge also left to the jury, the determination of the question whether one Robert W. Shoop had been authorized by the gas company to speak for it, in granting permission to the defendant to make use of an outside light. We do not find anything in the evidence which justifies the submission of this question to the jury. It does not appear that Mr. Shoop, who was a director of the company, had any authority to change or modify the terms of the written lease. The third, fourth, and fifth assignments of error are therefore sustained, as are also the sixth and seventh.

The judgment is reversed, and a venire facias de novo is awarded.