## Fisher et al., Appellants, v. Ronemus et al.

*Appeals—Practice, Supreme Court—Assignments of error—Affidavits of defense.*

1. An assignment of error to the refusal of judgment for want of a sufficient affidavit of defense, will not be considered, where no appeal was taken from the discharge of the rule for it, and, more than eight months after the expiration of the period within which an appeal could have been taken, the case was called for trial.

*Beneficial associations—Unincorporated—Death benefits—Payment "to friends of deceased"—Widow—Next of kin—Contract—Construction by parties—Maxims—Contemporanea expositio.*

2. Where the rules of an unincorporated beneficial association provide that death benefits shall be paid "to the friends of the deceased," uncles of a deceased member are entitled to such benefits in preference to a foster mother, where it appears that the deceased had left no widow, descendants, father, mother, brothers or sisters and that, in cases of two hundred deaths, for over forty years, such benefits had always been paid to the widow of a deceased member, or where there was no widow, to the next of kin.

3. Where the parties have interpreted a contract themselves and acted upon such interpretation, the courts will regard it as the proper one and enforce it accordingly. Contemporanea expositio est optima et fortissima in lege.

Argued March 10, 1920. Appeal, No. 212, Jan. T., 1920, by plaintiffs, from judgment of C. P. Carbon Co., Oct. T., 1917, No. 49, refusing to take off nonsuit, in case of John Fisher et al. v. John S. Ronemus and Hugh McGorry, as custodians of the Death Beneficial Fund raised and created by the Organization of Mine Workingmen of the Village of Nesquehoning on account of the death of James Gallagher, 2d. Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ. Reversed.

Assumpsit for death benefits. Before BARBER, P. J. The opinion of the Supreme Court states the facts.

The court entered a compulsory nonsuit, which it subsequently refused to take off. Plaintiffs appealed.

*Errors assigned* were (1) denial of plaintiffs' motion for judgment for want of a sufficient affidavit of defense; (2) in overruling plaintiffs' offer of proof, set forth in the opinion of the Supreme Court; and (3) refusal to take off nonsuit.

*Ben Branch,* of *Freyman, Thomas & Branch,* for appellants.—In determining the meaning of an indefinite or ambiguous contract, the construction placed on it by the parties themselves is controlling: Saltsburg Gas Co. v. Saltsburg, 138 Pa. 250; Bower v. Walker, 220 Pa. 294; Thatcher v. West Chester St. Ry., 35 Pa. Superior Ct. 615; McMillin v. Titus, 222 Pa. 500; Peoples Natural Gas Co. v. Braddock Wire Co., 155 Pa. 22; Coleman v. Grubb, 23 Pa. 393; Kendall v. Klapperthal, 202 Pa. 596; Lummis v. Devine, 9 Pa. Superior Ct. 349; Swigert v. Hartzell, 20 Pa. Superior Ct. 56; Berridge v. Glassey, 112 Pa. 442; Wright v. Monongahela Nat. Gas

Co., 2 Pa. Superior Ct. 219; Beedy v. Nypano R. R., 250 Pa. 51.

*P. B. Roads,* with him *Geo. M. Roads,* for appellees.— There is nothing in the resolution to indicate that the contributions should become part of the estate of the deceased member, and in the absence of such a provision, decedent's estate has nothing to do with the fund. Even had there been no nominee, or the designation of one were fatally defective, no right of recovery vested in the legal representatives of the decedent, much less in these alleged heirs suing directly and jointly: Dickerson, Admx., v. Midvale B. Assn., 264 Pa. 415.

A beneficial society, if such an association as the one under consideration can be called one, is not an insurance company, and is not governed by the rules applicable to the latter: Heasley v. Heasley, 191 Pa. 539; Northwestern, etc., Assn. v. Jones, 154 Pa. 99.

OPINION BY MR. CHIEF JUSTICE BROWN, April 19, 1920:

Appellants' first assignment of error, which is to the refusal of judgment for want of a sufficient affidavit of defense, cannot be considered, as no appeal was taken from the discharge of the rule for it, and more than eight months after the expiration of the period within which an appeal could have been taken, the case was called for trial. The two remaining assignments complain of errors then committed, and we pass upon them.

On June 10, 1878, a large majority of the men employed in and about the coal mines of the Lehigh Coal & Navigation Company at Nesquehoning, this State, organized as an unincorporated body for the purpose of creating a fund for the benefit of those who might survive any one of their members dying as a result of injuries sustained in the course of his employment, the plan and arrangement being that each person employed in or about the coal mines, who maintained membership in the organization, should pay one day's wages for the

use and benefit of the friends of a fellow workman who might die as the result of an accident. The organization has continued up to the present time, but without constitution, by-laws or regulations other than the following resolutions, adopted on the day it was formed: "Resolved: That any person or persons meeting with an accident resulting in death, that one day's wages shall be paid by each employee of the Lehigh Coal & Navigation Company, at Nesquehoning, to the friends of the deceased, to be collected through the office of the said company. Resolved: That if more than one person meets with an accident at the same time, causing death, that one day's pay be donated monthly until the friends of each of the deceased, receive the full amount donated. Resolved: That work in and around the mines shall continue until the day of the funeral of the deceased, when work shall be suspended one-half day to pay due respect to our departed comrade or comrades. Resolved: That hereafter any person or persons coming to work in our midst shall be notified by the duly appointed committee of the adoption of these resolutions. Resolved: That the above resolutions include all persons working in or about the mines or breaker. Resolved: That any person who shall hereafter take his name from the contribution list, shall never be readmitted as a member of this organization." In accordance with the foregoing resolutions, upon the death of a contributing member, one day's wages have always been collected from each employee of the coal company, through its office, and paid without dispute to the parties recognized as entitled to the fund. In January, 1917, James Gallagher, a member of the association, while employed in and about the mines of the company, sustained an injury which caused his death, and, under the resolutions, a fund of $1,675 was collected from his surviving coemployees. This is now in the hands of the defendants for payment to the parties entitled to it, and their contention is that it should be paid to the foster mother

of the deceased, as "his best friend." Gallagher, who was about twenty years of age at the time of his death, survived both of his parents and died unmarried, without brothers or sisters surviving. The plaintiffs are three uncles—the first, a brother of his mother, and the other two, brothers of his father—and they sue, as next of kin of the deceased, to recover the moneys held by the defendants. At the conclusion of the testimony, the learned judge below, before whom the case was tried without a jury, entered a judgment of nonsuit, which the court refused to take off, solely on the ground that, under the terms of the resolutions, the fund is payable "to the friends of the deceased," and not to his next of kin. The correctness of this is the single question before us.

While the words "the friends of the deceased," as used in the resolutions, are in themselves unambiguous, it is quite clear that the person or persons to whom they are intended to apply, upon the death of a member of the organization, must be uncertain. He may leave many friends, some nearer to him than others, but all his friends, and how can it be determined who among them are to receive the fund collected in pursuance of the resolutions? The members of the organization knew, at the time of their adoption, what the words were to mean, and if, for the more than forty years following, in every instance of approximately two hundred deaths, the parties entitled to the benefits were recognized by the organization as the surviving widow, or, if none, the next of kin of the deceased, how can a different interpretation be now placed upon the words? The deceased paid his dues under the organization's construction of them.

The appellants offered to show, by a member of the organization who was a contributor to former funds raised by it, that he was familiar with its working and history; that since its inception approximately two hundred persons coming within the provisions of the resolutions met with accidents in the mines resulting

in death, and that in every instance prior to the death of Gallagher the association paid the death benefit to the wife of the deceased workingman, where there had been a wife surviving; and, where there had been none, to the next of kin. If this had been shown, the nonsuit could not have followed. That the offer should have been allowed is in accord with reason and settled by authority, for the rule as to the construction of contracts is equally applicable to the resolutions under consideration: Contemporanea expositio est optima et fortissima in lege. "Courts will, if they can, give to the contracts of parties the exact effect which the parties themselves gave to them and interpret them just as they interpreted them (Connery v. Brooke, 73 Pa. 84; Creveling v. Wood, 95 Pa. 152, 158; Ringrose v. Ringrose, 170 Pa. 593; Wright v. Monongahela Nat. Gas Co., 2 Pa. Superior Ct. 219) ; nor will they 'assume to understand the interests of contracting parties better than the parties themselves': Phillips v. Blatchford, 137 Mass. 510" : Kendall v. Klapperthal Co., 202 Pa. 596. "Where the parties have interpreted the contract themselves and acted upon such interpretation, the court will regard it as the proper one and enforce it accordingly. 'When a contract is capable of two different interpretations,' says AGNEW, J., in Gass's App., 73 Pa. 39, 48, 'that which the parties themselves have always put upon it, and acted upon, especially as here for a long series of years, a court will follow, because it is the true intent and meaning of the parties which are to be sought for in the language they use.' Courts will, if they can, give to the contracts of parties the exact effect which the parties themselves gave to them, and interpret them just as they interpreted them: Gillespie v. Iseman, 210 Pa. 1. When the court is asked to say what the parties meant or intended by their contract, it is entirely safe to point to their own construction of it, as evidenced by their course of dealing under it: People's Natural Gas Co. v. Braddock Wire Co., 155 Pa. 22, 25: McMillin v. Titus, 222 Pa. 500.

The second and third assignments of error are sustained and the judgment is reversed with a procedendo.