# Baeder, Adamson Co., Appellant, *v.* F. W. Tunnell & Co., Inc.

*Contract—Construction—One theory at trial, another on appeal —Ambiguous contract—Construction by parties.*

1. Where a party advances one theory as to construction of a contract at the trial in the court below, he will not be heard, on appeal, to assert a new and different theory.

2. Where the word "cost," as used in a contract, has two different meanings and is consequently ambiguous, the construction placed on it by the parties themselves will be given effect by the court in its interpretation of the contract.

Argued January 7, 1926. Appeal, No. 125, Jan. T., 1926, by plaintiff, from decree of C. P. No. 5, Phila. Co.,

June T., 1921, No. 9658, for defendant on bill in equity, in case of Baeder, Adamson Co. v. F. W. Tunnell & Co., Inc. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Bill for discovery and account.

Exceptions to report of Frederick C. Newbourg, Jr., Esq., master. Before MARTIN, P. J.

The opinion of the Supreme Court states the facts.

From the record it appeared that MARTIN, P. J., after hearing, ordered an accounting. Exceptions to this order were dismissed in an opinion by MONAGHAN, J. The case was then referred to Frederick C. Newbourg, Jr., Esq., as master, and, to his report in favor of defendant, exceptions were filed by plaintiff. These exceptions were dismissed by a decree entered by MARTIN, P. J. Plaintiff appealed.

*Error assigned* was, inter alia, the final decree stated as follows:

1. That in determining a per pound cost of manufacturing glue during both periods of the contract between the plaintiff and the defendant dated June 6, 1919, defendant is not obliged to credit the value of any by-products against the cost of manufacture, or against the cost of stock used.

2. That plaintiff forthwith pay to defendant the sum of $30,578.36, with interest thereon from August 24, 1925.

*George W. Harkins, Jr.,* for appellant.—The contract is not ambiguous. The phrase "cost....of stock used" in its connection in the contract is not indicative of action or employment but of consumption. The parties knowing that there were valuable by-products evidently intended that it was only the quantity of stock that actually entered into and became a component part of the glue that

was to be charged for, in determining the cost of the glue: Herst v. DeComeau, 31 N. Y. 590.

An unambiguous contract is to be interpreted according to its plain meaning, even where the parties by their acts covering a long period have placed a contrary construction on it: Sternberg v. Brock, 225 Pa. 279; Miller v. Billington, 194 Pa. 452; Lenox Coal Co. v. Coal Co., 265 Pa. 572.

*Joseph J. Brown,* with him *Henry P. Brown,* for appellee.

OPINION BY MR. JUSTICE KEPHART, January 18, 1926:

Appellant purchased from appellee one-half its product of glue for a period of two years and agreed to pay "the per pound cost of manufacture as shown by the books of account of F. W. Tunnell & Company, Inc., this cost to be based on all charges entering into the manufacture of glue,......plus the cost per pound of stock used in the manufacture of the glue,—plus a fixed profit at the rate of two cents per pound."

The bill of complaint predicated the right to discovery and accounting on an alleged false charge, contained in appellee's statement of cost, submitted at the close of the first year, which represented that the actual cost of manufacturing the glue was as set forth in the statement. This representation it charges was false; but, relying on its accuracy, the bill was paid as rendered. When the statement for the second period was presented, payment was refused it and an examination of the books demanded. This examination, it was claimed, revealed for the first time that the cost of manufacture had not been credited with certain by-products or waste derived from the manufacture of glue, which actually, as well as by usage and custom of the glue trade, reduced the cost of manufacture of glue sold and delivered.

Appellant's pleadings, request for findings of fact and conclusions of law were all based on the assumption that

this credit must be given by-products in the cost of manufacture because the usage and custom of the trade and correct accounting required it.    Many witnesses were called to prove this fact, but, notwithstanding, the chancellor found the cost of manufacture was not reduced because the trade generally credited by-products to the cost of manufacture, and concluded "the contract specifically provided in plain terms the cost of manufacture of glue is to be based on all charges entering into the manufacture as shown by the books of account of F. W. Tunnell & Company."    The court held appellee was not obliged to credit the value of by-products because the books showed this had never been done.    The above quoted conclusion of law was not excepted to, nor was the fact Tunnell & Company never accounted on its books for waste or refuse.

A new theory is here evolved for establishing the by-product as a credit.    It is, that the plain and unambiguous meaning of the contract requires it to be done.    As stated in appellant's brief, the "manufacturing costs have been eliminated from consideration and the main question is, What is the meaning of 'cost per pound of stock used in the manufacture of glue' taken in connection with the provision from a fixed profit 'at the rate of two cents per pound.' "    This idea is quite different from the obligation to credit because of a custom, the sole contention during the trial.

The contest in the court below was over the cost of manufacture, of which cost stock was an integral part, being clearly included in "all charges entering into the manufacture of glue."    This clause is sweeping and unless a plain intent is shown to the contrary, cost of stock must be included.    To avoid the effect of the above-quoted conclusion of the trial judge which made "the books of account" the determining factor, appellant eliminates the manufacturing cost and segregates from it one of its definite elements, and sets up for controversy the new theory as an independent clause not sub-

ject to the general provision governing the determination of cost of manufacture and on a basis differing from that alleged in the bill. This effort must leave appellant without ground to pursue his case. Even on this new theory, it is inevitably driven to the books for cost in connection with this item, which may be charged under another title; but this phrase "cost per pound, etc.," does not qualify or limit "cost of manufacture," it makes it certain this item was not to be omitted.

The plain and unambiguous terms of the contract so definitely asserted may and no doubt would have been the subject of a separate and distinct controversy, to which evidence might well have been adduced had it been severable from the preceding clause which included it, but it was not laid hold of in the pleadings as a separate basis for reaching cost. Appellant having relied solely on the cost of manufacture being reduced by by-products, actually or through a usage and custom of the trade relative to accounting and charges, should not now be heard to assert a new and different theory: Achenbach v. Stoddard, 253 Pa. 338, 343; Weiskercher v. Connelly, 256 Pa. 387, 389; Isett v. Maclay, 265 Pa. 165, 170; Kauffman v. Kauffman, 266 Pa. 270, 276; Sullivan v. B. & C. R. R. Co., 272 Pa. 429, 436; Saxman v. McCormick, 278 Pa. 268, 273; Consolidated Cigar Corp v. Corbin and Bodine, 285 Pa. 273. The court in banc, in dismissing the exceptions filed to the adjudication of the chancellor, held the contract was not plain, but ambiguous, and should be determined by the construction placed on it through the conduct of the parties, illustrating that thought in this way: the raw material thrown into the kettle may be considered as "used" in the process of manufacturing glue, or all raw stock in the vat may not actually be "used," in the sense of being entirely consumed, and the residue may be disposed of, or, as here, considered by the parties either of no value or not entitled to credit against the cost of manufacture. This was in addition to the main determi-

nation of the case based on the pleadings as found by the chancellor.

We are not prepared to follow the thought of the court in this respect but we believe the word "cost" in the phrase "cost per pound of stock used" has two different meanings and consequently is ambiguous. To what does cost refer,—the first cost, or the amount paid for a given commodity, or does it mean cost in the accounting sense, e. g., an indeterminate cost to be reached at some time in the future by subtracting the value, if any, when the vendor sells or uses the by-product? Indeed, the refuse in vendor's possession may be of negligible or varying value, or a source of expense to vendor, in which case there may be one or more credits or charges which should be deducted from, or added to, the price paid for an article to determine the ultimate or "true cost." We have many times held that where a contract is ambiguous the construction placed upon it by the parties themselves will be given effect by the court in its interpretation of the contract: Gillespie v. Iseman, 210 Pa. 1; Wilson v. Heilman, 219 Pa. 237; Collison v. Philadelphia Co., 233 Pa. 350; Myers' Est., 238 Pa. 195; Lehigh Val. Coal Co. v. Searle, 248 Pa. 385.

During the negotiations that led to the contract and when the contract was executed, this by-product or waste from materials entered into glue was of little or no value. It was offered to appellant and rejected. With this knowledge, appellant agreed appellee's books of account should show the cost of manufacture; as the accounting system of concerns engaged in this business varied, so did the fact of placing as a credit the value of such an item. The parties through subsequent dealing, did not require the waste or refuse to be considered as a reduction in the cost of stock or manufacture. This finds support in the evidence apart from the fact it was taken to be of no value. When the first statement above noted was presented, it showed on its face the value of by-products was not credited. When appellant at that

time requested leave to inspect the books, every opportunity was afforded the examiners to ascertain the accuracy of the items set forth.   Nowhere in appellee's books did it appear this by-product was credited; as a fact appellant must have known it had not been credited. With this knowledge, it paid the sum called for in the statement.   The value of the by-product here contended for forms by far the greater part of appellant's claim.

The court below found appellant's conception of the meaning of the cost of stock used in manufacturing the glue was the same as that of appellee's and that the value of the by-products was not intended by the parties to be a credit or to be deducted from either the first or the second elements of price as noted in the contract.   It follows that the further provision of a profit of two cents per pound is not material to the conclusion thus reached.

Decree affirmed at cost of appellant.