Fidelity Trust Company *v.* The Travelers Insur-
ance Company (et al., Appellant).

Argued October 14, 1935. Before FRAZER, C. J., KEP-
HART, SCHAFFER, MAXEY, DREW, LINN and BARNES, JJ.

162

*Charles B. Prichard,* for appellant.

*Earl F. Reed,* of *Thorp, Bostwick, Reed & Armstrong,* with him *Joseph A. Langfitt, Jr.,* for appellee.

OPINION BY MR. JUSTICE MAXEY, November 25, 1935:

On January 21, 1933, William H. Tenser of Pittsburgh designated the Fidelity Trust Company the beneficiary of two policies of insurance upon his life. By a trust agreement of the same date the Fidelity Trust Company agreed to receive and pay the proceeds, as trustee, to certain persons named therein, the largest share going to one Clementine Bole. Tenser died June 16, 1933, and thereafter his widow, Gertrude T. Tenser, who had previously been the beneficiary of these policies, also claimed the proceeds. Suit being brought upon the policies by the trust company, the insurer admitted its liability, paid the money into court, and petitioned that the opposing claimants be required to interplead. The petition was granted and a feigned issue framed, with the Fidelity Trust Company, trustee, as plaintiff, and Gertrude T. Tenser as defendant. Pleadings were filed by the parties, whereupon plaintiff moved for judgment for want of a sufficient affidavit of defense. The court refused the motion (which action, on appeal, this court

affirmed per curiam, 316 Pa. 385, 175 A. 409) and the case proceeded to trial. The jury returned a verdict for defendant, but the court in banc entered judgment for plaintiff n. o. v., and defendant appealed.

William H. Tenser and A. J. Phipps were, for a number of years, engaged as partners in the food brokerage business. In May, 1921, they orally agreed that, in lieu of attempting to value the good will in appraising the partnership assets in the event of the death of either partner, each would take out a policy of life insurance for $10,000, on his own life, and payable to his wife, the premiums to be paid out of partnership funds and charged to partnership expense. This was done. The partners were about the same age; they had an equal interest in the business; and the premiums were almost identical in amount. This agreement was embodied in paragraph eight of a written partnership agreement executed the following September.* The business continued to prosper, and, in December, 1926, they each took out, in pursuance of a further agreement, additional policies of insurance for $10,000, upon the same terms and conditions. The parties never discussed with each other whether the insured should retain the right to change the beneficiary of his policies. All the policies, however, expressly reserved to the insured that right.

---

* Paragraph eight reads as follows: "It is further agreed that in the event of the death of either partner before the termination of the partnership as herein provided the net value of the business shall be promptly ascertained by the joint appraisal of the surviving partner and the legal representatives of the decedent and in case of any disagreement arising therein, the matter in dispute shall be referred to and decided by an arbitrator mutually chosen and as soon as same is accomplished, the amount due decedent's estate being the one-half part or portion of the value of the entire net worth of the partnership business shall be paid to the said legal representatives. Said appraisal shall not include any amount for the good will of the business, that having already been adjusted by mutual insurance carried by the business and payable to the respective wives of the partners."

In February, 1927, Tenser exercised his right to change the beneficiary of his policies, and made them payable to the Fidelity Trust Company, in trust, to pay $5,000 to his wife, and the income from the balance of the proceeds to her during her natural life, with discretion to pay additional sums out of the principal for her support and maintenance. In January, 1931, Tenser revoked this arrangement and made the policies payable to his estate. In January, 1933, he again changed the policies to be payable to the Fidelity Trust Company, in trust to pay the proceeds as follows: $12,500 to Clementine Bole, $1,500 to his mother, and the balance equally to his two sisters. Phipps did not know of the changes Tenser had made until 1931, but meanwhile, in February, 1928, he changed the beneficiary of his own policies to the Fidelity Trust Company, as trustee; he revised the trust agreement in 1931, and revoked it in 1934. Throughout these changes Phipps retained his wife as beneficiary of the trust, although she was provided for in part by income rather than by principal.

At the trial plaintiff placed in evidence the trust agreement of January, 1933, and the admitted averments of the statement of claim that it was the beneficiary named in the policies on Tenser's life at the time of his death, and rested. Not disputing these facts, defendant contends, as she did below, that the above cited provisions of the partnership agreement of 1921 were made, among other reasons, for her benefit, making her a donee beneficiary thereof, that therefore she acquired a vested interest in the insurance taken out under that agreement, which interest, being vested, her husband was powerless to destroy by attempting to change the beneficiary of his policies. She further contends that the trust agreement of 1933 is fraudulent and void in that it was executed in pursuance of a conspiracy entered into in consideration of a meretricious relationship between her husband and Clementine Bole.

Concerning defendant's first contention the learned trial judge, without submitting the question to the jury, ruled as a matter of law that under the evidence presented the defendant acquired no vested interest in the policies by virtue of the partnership agreement, and that, therefore, the decedent was at all times at liberty to change the beneficiary named in his insurance policy. In this we find no error. Defendant failed to prove her averments—which, when the case was here before, we held sufficient to prevent judgment on the pleadings—that the partnership agreement of 1921 was made for her benefit; she was at that time only a possible incidental beneficiary of that agreement. The principle that the donee beneficiary of a contract may sue thereon is inapplicable here, for defendant never acquired that status. It is not everyone who *may possibly benefit from a contract if it is carried out as first written* who acquires the substantial status of "donee beneficiary."

The language of the partnership contract of September, 1921, wherein Phipps and Tenser reduced to writing their previous oral agreement, shows clearly that the sole purpose for taking out the insurance was to avoid the difficult problem of appraising the good will of the business and determining the amount payable *to the estate* of that partner who should die first. That the policies were made payable to their respective wives was not the motivating cause of the contract entered into; it was (assuming their domestic relations then to have been harmonious) merely a logical and casual result, for wives are the usual beneficiaries of husbands' estates. That this is true is shown by the fact—to which Phipps testified—that they never discussed or thought about whether either partner should be permitted to change the beneficiary of his insurance. Had the identity of the beneficiaries been a matter of any moment to them, it is almost impossible to believe that they would not have made some provision dealing with the point. Moreover, the subsequent actions of both partners in making their

policies payable to trustees (and Phipps testified that in so doing he was not conscious of any violation of the agreement, although he did not know that Tenser had already taken this step) indicates that they felt free to change the beneficiaries of their insurance at will, and did not consider that by their partnership agreement they had irrevocably vested any rights in others. Their conduct in the respect stated constituted an authoritative interpretation of their agreement: Gillespie v. Iseman, 210 Pa. 1, 59 A. 266; Baeder Adamson Co. v. Tunnell & Co., 285 Pa. 356, 132 A. 172; Daub's Est., 313 Pa. 35, 169 A. 379. In view of these facts, we (like the court below) cannot attach much weight to Phipps' statement that the designation of their wives as the beneficiaries of the insurance was "not merely an incident." Actions are usually the clearest transcripts of states of mind. Since defendant failed to prove a contract giving her the fixed status of donee beneficiary, she is in exactly the same position as any other beneficiary named in a life insurance contract where the insured reserves the right to change the beneficiary. In such cases the designated beneficiary has no vested right or interest in the insurance during the lifetime of the insured; all she or he has is a mere expectation of benefit: Riley v. Wirth, 313 Pa. 362, 169 A. 139; Knoche v. Mutual Life Ins. Co. of N. Y., 317 Pa. 370, 176 A. 230, and cases there cited. When defendant's husband exercised his undoubted right to change the beneficiary, the wife's expectation became merely a prospect that had vanished.

Defendant likewise failed to prove her other contention that the trust agreement was made pursuant to a conspiracy between her husband and Clementine Bole. The testimony shows that after several years of neighborliness between the Tenser family and the Bole family, an attachment grew up between defendant's husband and Mrs. Bole. As a result Mr. and Mrs. Tenser separated in September, 1929. In 1930 Tenser and Mrs. Bole began divorce actions against their respective

spouses; in January, 1931, Tenser was denied a divorce, but subsequently Mrs. Bole secured hers. From the time of his separation from defendant, Tenser associated more and more with Mrs. Bole. Continuing to see Mrs. Bole almost daily, he at first lived at the Pittsburgh Athletic Association but shortly after being denied a divorce, he moved to a house within a block of Mrs. Bole's home, and in November, 1931, he moved to the Bole house, where he resided until his death. Occasionally defendant hired observers to watch her husband and Mrs. Bole, one of the observers living as a lodger at the Bole home for several weeks, and at the trial they testified to incidents which give support to Mrs. Tenser's contention that her husband's relations with Mrs. Bole were improper. While the evidence was sufficient to support the conclusion of the jury that a meretricious relationship existed between Tenser and Mrs. Bole, there was no testimony showing that they entered into any conspiracy or agreement with respect to the insurance policies. There is no evidence that the change of beneficiary of his insurance was not solely on Tenser's own initiative; there is no evidence that Mrs. Bole counselled it or even knew of it until after his death. A meretricious relationship cannot be expanded into a conspiracy to do all those things which often result from such relationships. The situation is analogous to that where a meretricious relationship exists between a testator and the principal beneficiary of his will. In that case, as we said in Central Trust Co. v. Boyer, 308 Pa. 402, 410, 162 A. 806, the mere existence of the immoral relation "does not give rise to a presumption of undue influence (Wertheimer's Est., 286 Pa. 155 [133 A. 144]; Weber v. Kline, 293 Pa. 85 [141 A. 721]); and, standing alone, it would not support the setting aside of the will (Allshouse v. Kelly, 219 Pa. 652 [69 A. 88]; Chidester's Est., 227 Pa. 560 [76 A. 418]; Kustus v. Hager, 269 Pa. 103 [112 A. 45])." A fortiori, if there is no proof of undue influence in such a case, there is no proof here of a con-

spiracy, which must be proved by full, clear and satis-factory evidence, not merely of an influence exercised over the decedent, but of an active coöperation and collusion between the guilty parties: Ballantine v. Cummings, 220 Pa. 621, 70 A. 546; Com. v. Benz, 318 Pa., 465, 178 A. 390. The evidence presented was not sufficient to take this case to the jury.

The judgment is affirmed.

