## Fitzgerald Estate

*William W. Booth, Joseph I. Marshall* and *Steven A. Stepanian,* for petitioners.

*Jack G. Armstrong* and *George L. Cass,* for respondent.

RAHAUSER, J., April 14, 1967.—Dr. Rufus H. Fitzgerald, retired Chancellor of the University of Pittsburgh, died April 11, 1966, a resident of the Ruskin Apartments, Pittsburgh, Pa. He was survived by his two daughters and his widow, Elizabeth H. Fitzgerald. Letters of administration d. b. n. c. t. a. were granted to the Mellon National Bank and Trust Company on April 18, 1966.

His widow, on December 5, 1966, filed an election to take against conveyances and, on February 23, 1967, his daughters, Helen F. Bethel and Mildred Brownlee, filed a petition to set aside the widow's election to take against conveyances within the scope of section 11 of the Estates Act of April 24, 1947, P. L. 100.

Decedent was the owner of contracts no. A-22004 and no. IA-20722-5, issued by the Teachers Insurance and Annuity Association of America, hereinafter referred to as TIAA. On March 1, 1938, while decedent was serving as Provost of the University of Pittsburgh, he was issued a deferred retirement annuity contract no. A-22004, under which the University of Pittsburgh paid $20,663 and the decedent paid the sum of $20,784, for a total of $41,447. This contract was exchanged on February 1, 1962, for annuity contract IA-20722-5, which provided for the payment to Dr. Fitzgerald of $424.33 per month; if he died before the total annuity was paid, the unpaid balance was to be paid to his named beneficiaries.

Under the contract issued on February 1, 1962, the monthly payments of $424.33 were made to decedent for a total of $21,640.83, leaving an unpaid balance of $37,663.94. Decedent designated as beneficiaries of this contract his first wife, Damie Cornell Fitzgerald, and in case of her death, her two daughters, petitioners, Helen Cornell Fitzgerald Bethel and Damie Mildred Fitzgerald Brownlee.

Decedent made no change in the method of settlement either on the death of his first wife or on his second marriage.

The stipulation filed by the parties at the hearing contains copies of all pertinent papers and all the contracts existing between decedent and the Teachers Insurance and Annuity Association of America (TIAA).

Petitioners, decedent's daughters, contend that the retirement contracts are not affected or governed by the provisions of section 11 of the Estates Act of 1947. They further contend that decedent had no power over the contract, that decedent made no conveyance of assets of any kind or character, and that the election to take against the aforesaid contracts should be set aside.

The widow filed an answer to the petition to set aside her election, and the matter came before the court for hearing on March 27, 1967.

The questions for decision are:

1. Does section 11(a) of the Estates Act of 1947 apply to certain of the proceeds of an annuity contract, which was originally purchased in 1938, and a replacement annuity contract, which was issued in 1962 for payment of the benefits provided in the original annuity contract?

2. Did annuitant retain a power to appoint by will, to revoke or to consume the proceeds thereof within the meaning of section 11(a) of the Estates Act of 1947?

The rights of the parties turn on the application of section 11 of the Estates Act of 1947, as amended, 20 PS §301.11, which provides, inter alia:

"Conveyances to Defeat Marital Rights.—

"(a) In General. A conveyance of assets by a person who retains a power of appointment by will, or a power of revocation or consumption over the principal thereof, shall at the election of his surviving spouse, be treated as a testamentary disposition so far as the surviving spouse is concerned to the extent to which the power has been reserved, but the right of the surviving spouse shall be subject to the rights of any income beneficiary whose interest in income becomes vested in enjoyment prior to the death of the conveyor. The provisions of this subsection shall not apply to any contract of life insurance purchased by a decedent, whether payable in trust or otherwise.

"(b) Determination of Share. The spouse may elect to take against any such conveyance and shall be entitled to one-third thereof if the conveyor is survived by more than one child, or by one or more children and the issue of a deceased child or children, or by the issue of more than one deceased child, and in all other circumstances one-half thereof".

Section 11 of the Estates Act specifically exempts the proceeds of life insurance purchased by decedent. There is a distinct difference between the type of annuity here under consideration and life insurance as defined by section 11 of the Estates Act of 1947. Bayer's Estate, 345 Pa. 308, indicates the difference in the discussion there between an annuity and life insurance. At page 311, Justice Linn states:

"For considerably over 100 years the legislature has repeatedly recognized the distinction between life insurance contracts and annuity contracts and has dealt separately with them. In Com. v. Metropolitan Life Insurance Co., 254 Pa. 510, 98 A. 1072, involving gross

premium taxation, it was said (page 514) : 'The power to make insurance contracts and to grant annuities seems to be recognized as entirely distinct in the Pennsylvania statute providing for incorporation of insurance companies. . . . It is significant that neither the Legislature of Pennsylvania or New York appears to have supposed that the power to make every insurance appertaining to or connected with the lives of individuals, conferred authority also to grant or purchase annuities. This authority is expressly added to the statute of each state.'

"The same distinction was observed in the legislation exempting proceeds of life insurance policies and also the proceeds of annuity contracts from liability to the beneficiary's creditors by designating them separately. By the Act of April 15, 1868, P. L. 103, entitled 'Relating to Policies of Life Insurance and Annuities' it was provided that such policies or annuities for the benefit of wife, children or any dependent relative, should be exempt from claims of creditors of such person. This act, with several subsequent acts on the same subject, was considered in Weil v. Marquis, 256 Pa. 608, 101 A. 70. Annuities and life insurance were again dealt with separately in the Act of May 17, 1919, P. L. 207, and the supplementary Act of June 28, 1923, P. L. 884, No. 335, 40 PS section 517. . . .

"An annuity is generally defined as 'A stated sum payable annually' or 'as a yearly payment of a certain sum of money granted to another in fee for life or for years and chargeable only on the person of the grantor.' [3 C. J. S. 200]

"Comparison of the definitions of life insurance and of annuities shows obvious differences between these two classes of contracts. If, with these definitions in mind, the simple life insurance contract is contrasted with the traditional annuity contract, it will be observed that, in the case of life insurance, for annual

premiums payable to the company (which in effect are annuities paid by the insured) the company will pay a specified sum at the insured's death; whereas the converse is true of the annuity contract, for, in that transaction the annuitant pays the single sum in consideration of which the company makes annual payments to him. The amount paid on the insurance policy at the insured's death pursuant to the obligation created in his lifetime, is a transfer of property vesting in possession or enjoyment at his death and would be subject to the inheritance tax but for the exemption in clause (d). We are, of course, now considering contracts in which the right to change the beneficiary has been reserved, because such beneficiary has no vested interest in the policy or its proceeds during the insured's lifetime, but only an expectancy.[5] See Knoche v. Mutual Life Insurance Co., 317 Pa. 370, 371, 176 A. 230; Riley v. Wirth, 313 Pa. 362, 169 A. 139; Irving Bank v. Alexander, 280 Pa. 466, 470, 124 A. 634; Weiil v. Marquis, 256 Pa. 608, 614, 101 A. 70; Fidelity Trust Co. v. Travelers' Insurance Co., 320 Pa. 161, 166, 181 A. 594.

"In the case of the traditional annuity contract, nothing remains to pass at the annuitant's death and therefore there is no transfer to tax. But if the parties to the annuity contract provide, as in this case, that a specified total shall be paid in annual installments but if the annuitant die before receiving the total, the balance shall then pass to his beneficiary, there is a taxable transfer of property because the beneficiary's right does not vest until the annuitant's death and the property transferred, not being the proceeds of policies of life insurance within clause (d), is not within the

---

"[5] If the right to change the beneficiary is not reserved, the beneficiary has a vested right to the obligation and not a mere expectancy: compare Entwistle v. Travelers Insurance Co., 202 Pa. 141, 51 A. 759".

exemption. See Paul: Federal Estate and Gift Taxation (1942), Vol. 1, sections 10.08 and 10.09".

The contracts here involved are not insurance contracts, so they are not excepted from the provisions of section 11 of the Estates Act. We will next consider whether these contracts were conveyances which became effective prior to the effective date of the Estates Act of 1947, viz.; January 1, 1948.

Counsel for petitioner contends that the contract under consideration is one continuous contract from the time of its original execution on March 1, 1938, until the date of death of decedent on April 11, 1966, and, therefore, could not be affected by section 11 of the Estates Act of 1947, for the reason that section 21 of that act provides that the Estates Act shall not apply to conveyances made prior to January 1, 1948.

Under the original contract, no. A-22004, neither decedent's first wife nor his daughters would have been entitled to any benefits if Dr. Fitzgerald had died after any payment had been made to him. Paragraph 16 of said contract, under "Privileges and Options", reads as follows:

"16. Death Benefit Before First Annuity Payment. If the Annuitant dies before payment of the annuity begins, the Association will pay to DAMIE C. FITZGERALD, WIFE, IF SHE SURVIVES THE ANNUITANT, OTHERWISE TO SUCH OF HELEN CORNELL FITZGERALD AND DAMIE MILDRED FITZGERALD AS SHALL SURVIVE THE ANNUITANT, SHARE AND SHARE ALIKE, CHILDREN of the Annuitant, if living, as Beneficiary or Beneficiaries, the equivalent of the Accumulation under that one of the methods listed below that is elected by the Annuitant or if not elected by the Annuitant then by the Beneficiary: . . . ."

On February 5, 1962, Dr. Fitzgerald, in accordance with his rights under the original contract, no.

A-22004, applied to TIAA for an installment refund life annuity contract and, on the same day, filed an amendment to this application naming his two daughters as contingent beneficiaries. Pursuant to this application, TIAA issued contract no. IA-20722-5, dated February 1, 1962. Under this contract, Dr. Fitzgerald was to be paid $424.33 each month, so long as he lives. If the total of such monthly payments did not equal the proceeds of the original contract (no. A-22004), further benefits were payable to the beneficiaries under said subsequent contract. Pertinent provisions of contract no. IA-20722-5 read as follows:

"Beneficiary and Method of Payment of Death Benefit (subject to change): — DAMIE CORNELL FITZGERALD, WIFE; OTHERWISE EQUALLY TO HELEN CORNELL FITZGERALD BETHEL AND DAMIE MILDRED FITZGERALD BROWNLEE, DAUGHTERS—ANY REMAINING PAYMENTS DUE TO BE CONTINUED IN ACCORDANCE WITH SECTION 2 OF THE PROVISIONS ON PAGE 3—

"TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA, called 'TIAA' in this contract, agrees to pay an annuity in accordance with the provisions of this contract.

"GENERAL DESCRIPTION

"This summary gives a general statement regarding your contract.

"The complete provisions are contained on the following pages, which are part of this contract.

"This is an annuity contract issued for payment of the benefits provided in a previous contract. It provides a life annuity for you as the Annuitant, beginning on the date specified above. Payments will cease at your death, except that if you die before the total annuity payments you receive equals the Proceeds of Original Contract stated above, a further benefit will

be payable to the Beneficiary. This benefit will be either continuation of the annuity payments to the end of such period, or payment in one sum of the present value of such continued payments, whichever is designated above".

Section 2 of contract no. IA-20722-5, above referred to, reads as follows:

"Annuity and Death Benefit Payments. TIAA will make an annuity payment to the Annuitant on each annuity payment date during the lifetime of the Annuitant. Each annuity payment will be equal to the amount stated on the first page. If at the death of the Annuitant, the sum of the annuity payments already due is less than the Proceeds of Original Contract stated on the first page, the annuity payments will continue to be made to the Beneficiary, until the sum of all annuity payments made equals such Proceeds of Original Contract. If designated as the Method of Payment of Death Benefit on the first page hereof or if elected by the Annuitant, the present value of such remaining annuity payments will be paid in one sum.

"If the Annuitant or any Beneficiary dies while receiving annuity payments with no named Beneficiary or successor Beneficiary surviving, the present value of any such guaranteed payments then remaining unpaid to such deceased Annuitant or Beneficiary will be paid in one sum to the executors or administrators of such deceased Annuitant or Beneficiary. All present values will be computed at the rate of interest used in determining the annuity payments".

There was also an endorsement to said policy no. IA-20722-5, dated February 1, 1962, which reads as follows:

"Endorsement form attached to and forming part of Contract No. IA-20722

"Anything herein to the contrary notwithstanding, it is agreed that:

"In the event of the death of Damie Cornell Fitzgerald while receiving payments hereunder, payments remaining unpaid shall be commuted, according to the rate of interest used in determining the payments, and paid in one sum equally to such of Helen Cornell Fitzgerald Bethel and Damie Mildred Fitzgerald Brownlee, as shall survive Damie Cornell Fitzgerald; or, if neither of the above shall survive, to the executors or administrators of Damie Cornell Fitzgerald.

"TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA
"New York, N. Y., February 1, 1962
(Signature)
"Registrar"

A comparison of the terms of the original contract, no. A-22004, dated March 1, 1938, and the subsequent contract, no. IA-20722-5, dated February 1, 1962, clearly shows that Dr. Fitzgerald created new property rights in his first wife, Damie C. Fitzgerald, and his daughters, Helen F. Bethel and Mildred F. Brownlee, when he applied for and obtained the said contract dated February 1, 1962. Under the contract of March 1, 1938, if Dr. Fitzgerald received even one monthly annuity payment and then died, his wife and daughters would not have been entitled to any payments from TIAA. Under the contract dated February 1, 1962, even though Dr. Fitzgerald received monthly payments under the contract until he died, his first wife and his daughters were entitled at his death to the difference between the proceeds of the original contract, i. e., $59,304.77, and the sum of the annuity payments made to Dr. Fitzgerald.

Under the heading "Provisions" on page 4 of Exhibit E, the contract dated February 1, 1962, the following appears:

"1. Consideration. This contract is issued in consideration of the surrender to TIAA of its original

contract stated on the first page, application of the proceeds in the amount stated on the first page being in full satisfaction therefor and in accordance with the method of settlement".

It seems clear, not only from the changes in the said contracts, as above set forth, but by the very language of the contract above quoted, that there were two contracts here. The original contract was surrendered to TIAA, and it was fully satisfied when the proceeds generated by it were applied to the issuance of the subsequent contract. Once the original contract was surrendered, it had no further efficacy. The rights of the parties after the surrender of the original contract were based entirely on the subsequent contract. This subsequent contract was entered into as of February 1, 1962, long after the effective date of the Estates Act of 1947, and so section 11 of that act is applicable to the subsequent contract, no. IA-20722-5.

Dr. Fitzgerald had a power of consumption over the proceeds of the original contract, viz., $59,304.77, used to obtain contract, no. IA-20722-5. He was entitled to receive a monthly payment from such proceeds and, in fact, received $21,640.83 prior to his death, leaving a balance of $37,663.94 for distribution under the terms of the contract. His rights under said contract constitute a power of consumption, as explained in Longacre v. Hornblower & Weeks, 83 D. & C. 259, 262:

". . . The phrase 'power of consumption' does not have a settled meaning in the law, and it appears to us that the legislature was using the word 'consumption' according to its common meaning, and intended to apply the act to all conveyances of assets subject to a power in the transferor to reacquire beneficially the property conveyed. The Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 33, 46 PS §533, requires that words and phrases be construed according to their common usage when they have not acquired any peculiar meaning in the law. . . ."

Furthermore, under the terms of the latter contract, he could revoke the designation of beneficiaries under such contract. Provision 9, page 4 of the contract, exhibit E, reads as follows:

"9. Elections, Revocation of Election and Changes. By filing written notice with TIAA at its home office in form satisfactory to TIAA, the Annuitant may elect a method of settlement in accordance with Section 2, revoke or change such election, change the Beneficiary, or change the frequency of annuity or death benefit payments under Section 4. No such election, revocation, or change will take effect unless received by TIAA at its home office, but upon being so received it will take effect as of the date the notice was signed, whether or not the Annuitant is living at the time of such receipt. Such effect will be without prejudice to TIAA by reason of any payment made or other action taken by TIAA before such receipt".

Thus, annuitant had a power of revocation.

The funds not paid to Dr. Fitzgerald prior to his death would have been payable to his estate and, hence, subject to the terms of his will. Provisions 3 and 8 on page 4 of the annuity contract, exhibit E, read as follows:

"3. Beneficiary and Settlement Elections. The interest of any Beneficiary who does not survive the Annuitant will vest in the Annuitant, except as may be otherwise provided in any Beneficiary designation or settlement agreement in effect under this contract.

"The Annuitant may from time to time change the Beneficiary in the manner provided in Section 9.

"8. Payments to a Corporation, Trustee, etc. If a corporation, association, partnership, trustee, or estate becomes entitled to receive any benefit under this contract, TIAA reserves the right to pay the commuted value of such benefits in one sum and not as an annuity. TIAA will not be responsible for the acts or ne-

glects of any executor, administrator, trustee, guardian, or committee to whom any payment is made".

Thus, Dr. Fitzgerald retained a power of appointment by will over funds subject to his contract no. IA-20722-5 with TIAA, dated February 1, 1962, and so his conveyance of assets to TIAA under such contract was subject to the rights granted to his widow by section 11 of the Estates Act.

It is clear that the contract of February 1, 1962, took the place of the contract of March 1, 1938, and there is a complete new right of the beneficiaries under the 1962 contract to share in the proceeds of the policy. Much the same can be said here as was said in Huested Estate, 403 Pa. 185. There, at page 191, the court said:

" '. . . The word "conveyance" is defined in Section 1 (2) of the Act as follows: "Conveyance means an act by which it is intended to create an interest in real or personal property, whether the act is intended to have inter vivos or testamentary operation" ' ".

At page 192, the court continued:

"Each time the settlor executed an amendment or supplement after 1947 to his 1940 trust indenture, (a) the scheme of distribution as to the named beneficiaries was changed and (b) the amount or interest given to each beneficiary was substantially changed and (c) *the settlor completely restated the entire dispositive provisions,* so that each amendment or supplement constituted a new and complete disposition of the trust assets. Moreover, while the settlor did not state in each or any supplement that the dispositive provisions in the original trust deed were revoked, that was clearly his intent, and the necessary, actual and legal effect of each succeeding supplement was to revoke the dispositive provisions of the prior supplement and create at that time new dispositive interests or gifts.

"We therefore hold that the amendments of 1951 and of 1956 were clearly 'conveyances of assets' within both the language and the spirit of the Estates Act of 1947 and consequently each was 'a testamentary disposition [of Mr. Huested's property or estate] so far as the surviving spouse is concerned' and voidable at her election. The fact that his widow could not have set aside the trust indenture of 1940 if it had not been amended after 1947, is irrelevant; and the fact that the share of his widow was increased instead of being decreased by the amendments of 1951 and 1956 cannot operate to nullify or defeat her right of election to take her statutory interest in this property". *

It is reasonably clear that Dr. Fitzgerald, annuitant, retained a power to appoint by will, a power of revocation and a power to consume the proceeds of the annuity within the meaning of section 11(a) of the Estates Act of 1947. Accordingly, his widow has the right to elect to take against the annuity contract.

A decree will be drawn in accordance with this opinion.

---

\* "Settlor's widow attempted to prove that the trust was a mere agency account, illusory and therefore testamentary, by offering in evidence certain correspondence between the settlor and the trustee and certain inter office memoranda. This offer was rejected by the hearing Judge. For reasons hereinbefore appearing, it is unnecessary to pass upon this question".