## Bayer's Estate.

Argued March 23, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*E. Russell Shockley,* Deputy Attorney General, with him *Claude T. Reno,* Attorney General, and *Franklin B. Hosbach,* for appellant.

*Byron A. Baur,* of *Marsh, Spaeder, Baur & Marsh* and *English, Quinn, Leemhuis & Tayntor,* for appellees.

OPINION BY MR. JUSTICE LINN, May 11, 1942:

The question is whether amounts payable to a beneficiary under certain single-premium refund annuity contracts are subject to the inheritance tax. The learned court held the amounts were proceeds of policies of life insurance and therefore exempt.

William M. Bayer, a resident of the Commonwealth, died May 23, 1940, and left nine single-premium refund annuity contracts made with seven different insurance companies, bearing various dates from December 27, 1933, to April 26, 1937, the total of the single premiums unrefunded being $37,080.84. There were some variations in the terms of the contracts but for present purposes we shall consider one as typical. It states the age of the annuitant as 51 years 10 months; that the "single premium" is $18,108, for which the company promises to pay to Bayer, "the annuitant," $100 monthly "during the lifetime of said annuitant, such payments to terminate with the last payment due prior to the death of said annuitant, except that if the death of the annuitant occurs before the total of annuity payments made by the Company is equal to the sum paid by the annuitant as a single premium for this contract, the Company will continue the annuity payments to Martha E. Magraw . . . until the total annuity payments made shall equal the single premium paid, without interest."

The annuitant retained the right to change the beneficiary and it was agreed that, on the death of the bene-

ficiary before receiving the balance of the refund, payments due under the contract would be commuted at 4% per annum compounded and would be paid in one sum to the beneficiary's executors, administrators or assigns; if there was no beneficiary living at the death of the annuitant, the company would commute further payments due under the contract at 4% per annum compounded and pay them in one sum to the annuitant's executors, administrators or assigns.[1] The beneficiary named in each policy was a friend, Martha E. Magraw.

The elements of the transaction are simple: Bayer paid a single premium of $18,108 and discharged his obligation; the company agreed to pay him $100 every month, but if he died before receiving annuities aggregating the amount of the premium, the right to receive the unpaid balance at his death should be in his nominee.

The two provisions of the inheritance tax statute to be considered are contained in article I, section 1, of the Act of June 20, 1919, P. L. 521, as amended, 72 PS section 2301, imposing a tax on "the transfer of any property, real or personal, or of any interest therein or income therefrom, in trust or otherwise, to persons or corporations in the following cases: . . . (c) When the transfer is of property made by a resident . . . by deed, grant, bargain, sale or gift, made in contemplation of the death of the grantor, vendor, or donor, or intended to take effect in possession or enjoyment at or after such death." The other provision is clause (d), providing: "The proceeds of policies of life insurance, payable otherwise then to the estate of the insured, and whether paid directly by the insurer to the beneficiaries designated in the policies, or to a trustee designated therein, and held, managed, and distributed by such trustee to or for the benefit of such persons or classes of persons under such plan and in such estates as may have been prescribed by

---

[1] Under three of the contracts Bayer had the right during his lifetime to demand the cash surrender value of the contracts.

the insured under agreement with such trustee, shall not be included in imposing any tax under this section."

The taxable event was the transfer at Bayer's death, because, until that moment, he had the right to designate the transferee. The subject taxed was the interest in the contract intended by him then to take effect in possession or enjoyment, i. e., the company's obligation to repay any remaining balance of the amount received as the single premium. As these annuity contracts, like various forms of life insurance policies in which the right to change the beneficiary has been reserved, provide for the transfer of property "to take effect in possession or enjoyment at or after" death, they are directly within the words of clause (c). That being so, the question arises: Is the property which passed to Martha E. Magraw on Bayer's death exempt as proceeds of life insurance policies within clause (d)?

For considerably over 100 years the legislature has repeatedly recognized the distinction between life insurance contracts and annuity contracts and has dealt separately with them. In *Com. v. Metropolitan Life Insurance Co.*, 254 Pa. 510, 98 A. 1072, involving gross premium taxation, it was said (page 514) : "The power to make insurance contracts and to grant annuities seems to be recognized as entirely distinct in the Pennsylvania statute providing for incorporation of insurance companies. . . . It is significant that neither the Legislature of Pennsylvania or New York appears to have supposed that the power to make every insurance appertaining to or connected with the lives of individuals, conferred authority also to grant or purchase annuities. This authority is expressly added to the statute of each state."[2]

---

[2] The distinction was recognized as early as March 10, 1812, 5 Sm. L. 312, when the legislature authorized the incorporation of the Pennsylvania Company for Assurances on Lives and Granting Annuities and reversions authorizing the company to "make an insurance on lives and grant annuities." On March 17, 1836, P. L. 99, the legislature authorized the incorporation of the Girard Life Insurance,

The same distinction was observed in the legislation exempting proceeds of life insurance policies and also the proceeds of annuity contracts from liability to the beneficiary's creditors by designating them separately. By the Act of April 15, 1868, P. L. 103, entitled "Relating to Policies of Life Insurance and Annuities" it was provided that such policies or annuities for the benefit of wife, children or any dependent relative, should be exempt from claims of creditors of such person. This act, with several subsequent acts on the same subject, was considered in *Weil v. Marquis,* 256 Pa. 608, 101 A. 70. Annuities and life insurance were again dealt with separately in the Act of May 17, 1919, P. L. 207, and the supplementary Act of June 28, 1923, P. L. 884, No. 335, 40 PS section 517.

In considering whether the repayment of balances such as those repayable under these annuity contracts are within the exemption: "The proceeds of policies of life insurance . . . shall not be included in imposing any tax under this section," we must have in mind the separate treatment theretofore given in our legislation to life insurance as distinguished from annuity contracts and must conclude that the legislature intentionally omitted the proceeds of annuity contracts from the operation of clause (d). An exemption is not allowed unless clearly within the statute: *Com. v. Sunbeam Water Co.,* 284 Pa. 180, 183, 130 A. 405; *Com. v. Phila. Toilet & Laundry Co.,* 339 Pa. 261, 264, 13 A.2d 411.

This long-recognized distinction between the two classes of contracts has a basis in fact. In *Elliott's Executors' Appeal,* 50 Pa. 75, 80-81, READ, J., said: "But 'the contract commonly called life assurance, when properly considered, is a mere contract to pay a certain sum of money on the death of a person, in consideration of

Annuity and Trust Company of Philadelphia with authority to "effect insurance on lives of whatsoever sort or nature, to contract for, grant and sell annuities and reversionary payments, . . ." Others may be located by consulting Beitel's Titles of Corporations (Pa. 2d ed.).

the due payment of a certain annuity for his life; the amount of the annuity being calculated in the first instance, according to the probable duration of the life; and when once fixed it is constant and invariable. The stipulated amount of annuity is to be uniformly paid, on one side, and the sum to be paid in the event of death is always (except where bonuses have been given by prosperous offices) the same on the other. This species of insurance in no way resembles a contract of indemnity.' "[3] In considering the corporate power of a certain company to issue endowment insurance, in *Industrial Life Ins. Co. v. Hunt,* 335 Pa. 305, 307, 6 A.2d 781, Mr. Justice STERN referred to life insurance as follows: "An endowment provision is not, strictly speaking, life insurance although it is not uncommonly embodied in life insurance policies as an additional feature of the contract. Life insurance is an agreement to pay, to a person indicated, a certain sum upon the death of the insured; the endowment provision adds thereto a contract to pay to the insured himself a specified sum provided he lives to a certain age. Life insurance is for protection against the adversity of death; endowment is based upon the contingency of survival, and is essentially a form of investment."

An annuity is generally defined as "A stated sum payable annually" or "as a yearly payment of a certain sum of money granted to another in fee for life or for years and chargeable only on the person of the grantor."[4]

Comparison of the definitions of life insurance and of annuities shows obvious differences between these two classes of contracts. If, with these definitions in mind, the simple life insurance contract is contrasted with the traditional annuity contract, it will be observed that, in the case of life insurance, for annual premiums payable to the company (which in effect are annuities paid by

---

[3] The definition of Baron Parke, in *Dalby v. The India and London Life-Assurance Company,* 15 C. B. 365, 139 Eng. Rep. 465.

[4] 3 Corpus Juris 200.

the insured) the company will pay a specified sum at the insured's death; whereas the converse is true of the annuity contract, for, in that transaction the annuitant pays the single sum in consideration of which the company makes annual payments to him. The amount paid on the insurance policy at the insured's death pursuant to the obligation created in his lifetime, is a transfer of property vesting in possession or enjoyment at his death and would be subject to the inheritance tax but for the exemption in clause (d). We are, of course, now considering contracts in which the right to change the beneficiary has been reserved, because such beneficiary has no vested interest in the policy or its proceeds during the insured's lifetime, but only an expectancy.[5] See *Knoche v. Mutual Life Insurance Co.*, 317 Pa. 370, 371, 176 A. 230; *Riley v. Wirth,* 313 Pa. 362, 169 A. 139; *Irving Bank v. Alexander*, 280 Pa. 466, 470, 124 A. 634; *Weil v. Marquis,* 256 Pa. 608, 614, 101 A. 70; *Fidelity Trust Co. v. Travelers' Insurance Co.*, 320 Pa. 161, 166, 181 A. 594.

In the case of the traditional annuity contract, nothing remains to pass at the annuitant's death and therefore there is no transfer to tax. But if the parties to the annuity contract provide, as in this case, that a specified total shall be paid in annual installments but if the annuitant die before receiving the total, the balance shall then pass to his beneficiary, there is a taxable transfer of property because the beneficiary's right does not vest until the annuitant's death and the property transferred, not being the proceeds of policies of life insurance within clause (d), is not within the exemption. See Paul: Federal Estate and Gift Taxation (1942), Vol. 1, sections 10.08 and 10.09.

Appellee relies on *Krause's Estate,* 325 Pa. 479, 191 A. 162, in support of his argument for exemption, but

---

[5] If the right to change the beneficiary is not reserved, the beneficiary has a vested right to the obligation and not a mere expectancy: compare *Entwistle v. Travelers' Ins. Co.*, 202 Pa. 141, 51 A. 759.

the case is not controlling. In that case it appeared that the decedent in his lifetime gave money to a college; he reserved no right to control its investment or disposition or to receive income from it; the college agreed to pay interest at a fixed rate. It was an executed gift inter vivos; nothing was transferred at the donor's death because, after making the gift, he no longer had any interest in the property. It is unnecessary, because we think the law in this Commonwealth is clearly settled, to refer to decisions cited from other jurisdictions.

The order appeal from is reversed; the record is remitted for proceedings consistent with this opinion; costs to be paid out of the fund.