## Henderson Estate

Before Klein, P. J., Bolger, Lefever, Saylor and Shoyer, JJ.

*William Jay Leon*, for petitioner.

*Henry A. Frye, Robert A. Webster, Rawle & Henderson* and *Schwartz, Campbell & Henry*, for respondents.

*Earle N. Barber*, and *Philip A. Bregy*, for *MacCoy, Evans & Lewis*, for trustee and respondent.

*Frank J. Eustace*, for guardian and trustee ad litem.

SHOYER, J., July 17, 1958.—This is a proceeding by the widow of John R. Henderson, who died testate on November 9, 1957, to recover the proceeds of three policies of insurance on his life, in none of which was she the named beneficiary.

A policy for $10,000 in The Prudential Insurance Company of America, hereinafter called Prudential, and one for $25,000 in The Equitable Life Insurance Company of Iowa, hereinafter called Equitable Life, were held by the insured with the proceeds payable directly to named beneficiaries. These policies were

found among decedent's effects after his death. A third policy in the Equitable Life for $85,000 was payable to the trustee of an unfunded revocable insurance trust and delivered by insured to the trustee at the creation of the trust on February 13, 1952. All three policies were issued under the whole life plan, with standard statutory provisions, and originally named decedent's wife as beneficiary. She did not participate in any of the subsequent changes of beneficiary, nor in the original trust agreement with its two later amendments. Insured, himself, paid the premiums on all three policies. At the time of his death the right to change the beneficiary in each was reserved to him, but the final changes in all policies were made in 1952.

By his will decedent gave his jewelry and personal effects to his son, his residence to his wife and the residue in trust for his wife for life. Aside from his one half interest in Kirk & Nice, an undertaking firm, purchasable by his son for $100,000 under their partnership agreement, he left an estate of approximately $20,000 personalty and $6,000 realty. A tax clause made all death taxes payable out of his general estate. Decedent named his son, J. Malcolm Henderson, and his friend, Catherine K. Yardley, coexecutors.

Decedent's widow promptly filed her election to take against his will and simultaneously her election to treat the trust and the beneficiary designations under the three policies as conveyances and testamentary dispositions under section 11 of the Estates Act of April 24, 1947, P. L. 100, 20 PS §301.11.[1] She then

---

[1] Section 11 of the Estates Act of April 24, 1947, P. L. 100, became effective January 1, 1948. By amendment of February 17, 1956, P. L. 1073, effective April 1, 1956, section 11 was amended by dividing it into subsections and adding certain provisions. The provisions inserted by amendment are underlined below.

"Section 11: *Conveyances to Defeat Marital Rights.*

petitioned for citations against all the interested parties to obtain one half the policy proceeds as her widow's share under section 2(2) of the Intestate Act of April 24, 1947, P. L. 80, 20 PS §1.2(2). Frank J. Eustace, Jr., Esq., was appointed guardian ad litem of the minor remaindermen and trustee ad litem for all unascertained interests under the trust deed.

"*(a) In General.* A conveyance of assets by a person who retains a power of appointment by will, or a power of revocation or consumption over the principal thereof, shall, at the election of his surviving spouse, be treated as a testamentary disposition so far as the surviving spouse is concerned to the extent to which the power has been reserved, but the right of the surviving spouse shall be subject to the rights of any income beneficiary whose interest in income becomes vested in enjoyment prior to the death of the conveyor. *The provisions of this subsection shall not apply to any contract of life insurance purchased by a decedent, whether payable in trust or otherwise.*

"*(b) Determination of Share. The spouse may elect to take against any such conveyance and shall be entitled to one-third thereof if the conveyor is survived by more than one child, or by one or more children and the issue of a deceased child or children, or by the issue of more than one deceased child, and in all other circumstances one-half thereof.*

"*(c) Election Against Other Conveyances. A spouse electing under this section also must elect to take against the will, if he is a beneficiary thereunder, and against all other conveyances within the scope of subsection (a) of which he is a beneficiary.*

"*(d) Procedure. The election to treat a conveyance as testamentary shall be made in the same manner as an election to take against the will. If there is a will, such election shall be made within the same time limitations as an election to take against the will. If there is no will, such election shall be made within one year of the conveyor's death, and the Orphans' Court, on application of the surviving spouse made within such period, may extend the time for making the election. It can be made only if there has been no forfeiture of the right to make an election. The court having jurisdiction of the deceased conveyor's estate shall determine the rights of the surviving spouse in the property included in the conveyance"*: As amended by Act of February 17, 1956, P. L. 1073.

The case was argued before us on the answers filed to the widow's three petitions by respondents and also on certain cross actions taken by some of the latter.

*Prudential Policy #3,300,947*

This policy issued on decedent's life June 5, 1920. Three changes of beneficiary by insured in 1925, 1934 and 1950, named persons other than his wife. On April 28, 1952, he made a final change to "Ruth Bjornsgaard, Sister of the insured if living, otherwise to Catherine K. Yardley, Friend of the Insured". Following the filing of her elections as recited above, decedent's widow cited the insurer and Ruth Bjornsgaard, the beneficiary who survived, to show cause why the above-mentioned changes of beneficiary should not be declared "null and void" as to her, and why the entire death benefits payable under the said policy should not be decreed to be assets of the estate of decedent and distributable as such to the persons entitled to the said estate, and further, why the insurer should not be enjoined until further order of court from paying out or distributing the money representing the death benefits under the said policy. To this citation the beneficiary filed preliminary objections and a demurrer, and the insurer filed preliminary objections.

The widow rests her claim solely on the changes in the law of Pennsylvania made by the legislature in section 11 of the Estates Act of April 24, 1947, P. L. 100, as originally effective on January 1, 1948, and prior to the amendment of 1956. It is her contention that the changes of beneficiary in 1950 and in 1952 were conveyances within the meaning of this section. She concedes that had the last change of beneficiary been made after July 11, 1957 (date of last statutory amendment adding a new section 8 of the Estates Act [2]), she would

---

[2] Section 8: "Designation of insurance beneficiaries not testamentary.

be without any right to claim against either of the two policies of insurance owned outright.

The widow's petition must be denied for three reasons: First, the proceeds of a matured life insurance policy are not assets of the insured's estate; secondly, they are not the subject of an inter vivos conveyance; and thirdly, the proceeds do not form a testamentary disposition.

As defined by the Estates Act: " 'Conveyance' means an act by which it is intended to create an interest in real or personal property whether the act is intended to have inter vivos or testamentary operation." [3] For an act to amount to a conveyance something of value must be conveyed. That is elementary. If something is to be conveyed, it must be received by someone. Thus for the naming of a beneficiary to become a conveyance to the beneficiary some interest in the policy must be given or intended to be given by the mere act of placing the beneficiary's name on the policy. Especially is this so where possession of the policy is retained by decedent. It has long been well established in this Commonwealth that the proceeds of a life insurance policy owned by a decedent are not assets of his estate when the policy

---

"The designation of beneficiaries of life insurance shall not be considered testamentary, regardless of whether the insurance contract designates the ultimate beneficiaries or makes the proceeds payable, directly or indirectly, to a trustee of a trust under a will or under a separate trust instrument which designates the ultimate beneficiaries, and regardless of whether any such trust is amendable or revocable, or both, or is funded or unfunded, and notwithstanding a reservation to the settlor of all rights of ownership in the insurance contracts. Unless otherwise expressly provided in the conveyance, funds or other property so passing to a trust under a will shall become and be a part of the testamentary trust to be administered and disposed of in accordance with the provisions thereof, without forming any part of the testator's estate for administration by his personal representative": Act of July 11, 1957, P. L. 792, 20 PS §301.7a.

[3] Section 1(2) of the Estates Act.

contains a named beneficiary other than his estate or his personal representatives.

As stated in Burton's Estate, 20 D. & C. 566, 567, affirmed, 116 Pa. Superior Ct. 249:

"In the case of ordinary insurance, where the decedent (the insured) designates a third person as beneficiary, the proceeds are payable to the designated beneficiary and form no part of the decedent's estate: [citing cases]."

In a per curiam opinion our Supreme Court in Potter Title and Trust Company v. Fidelity Trust Company, Trustee, 316 Pa. 316, 317, said that from its earliest cases to the date of that opinion the court had uniformly upheld and encouraged life insurance policies and statutory provisions which protected them from claims of creditors.

This court in Welch's Estate, 32 D. & C. 231, 238, speaking through Judge (later Mr. Justice) Ladner, held that:

"Insurance policies stand on a different footing from that of physical properties transferred before death of an insolvent to his family, in fraud of creditors, for it is the policy of the law, even where rights of creditors may be adversely affected, to protect the beneficiaries: Irving Bank v. Alexander et al., 280 Pa. 466."

In Irving Bank v. Alexander, 280 Pa. 466, 470, 471, the court made the following pertinent comments concerning life insurance policies:

"We need not decide whether the cash surrender value of the policies was an asset of the insured prior to death, to be subjected to the payment of debts. Attention is called, however, to the acts of assembly hereinafter mentioned. After death, it is merged into the funds that arise at death by virtue of the insurance contract. . . . Under the contract of insurance, what was an inchoate right in the widow became a fixed

vested one concerning a property just brought into existence: . . .·

"An insurance policy stands on a footing a little different from physical properties transferred before death by an insolvent to his family in fraud of creditors. As to the latter, it becomes the duty of the personal representatives to secure the property through appropriate proceedings."

Similarly, the Transfer Inheritance Act of June 20, 1919, P. L. 521, as amended, 72 PS §2301(d), recognizes that proceeds of life insurance, payable otherwise than to the estate of the insured, are not an asset of a decedent's estate and are not subject to the Pennsylvania transfer inheritance tax.

In Wilson Estate, 363 Pa. 546, 549, Mr. Justice Stearne said:

"While the beneficiaries under the *will* and under the *deed* are the same individuals, the proceeds from insurance policies were not *thereby* blended with the assets of the estate. The same beneficiaries possess a different status under the will from that under the trust. . . . Proceeds of *life insurance policies* made payable to *designated beneficiaries* are exempted from transfer inheritance tax. . . . They form no part of the deceased insured's estate: [citing cases]."

The widow's counsel cites no authority in support of his contention that the naming of the beneficiaries in the three policies in 1952 was a conveyance or inter vivos transfer, and we have found none. The naming of a beneficiary is to be distinguished from the assignment of a life policy for a consideration which does not exceed the policy's loan or cash surrender value. Also, in the exceptional case where no right to change beneficiaries is reserved, it is well recognized that insurance is simply a third party beneficiary contract creating vested rights in the beneficiary; hence there is a completed inter vivos gift and there is no problem.

However, revocable transfers are unknown to the law (although recognized by equity in the law of trusts), so that where the insured reserves the right to change the beneficiary without the latter's consent, it is impossible to fit the transaction into any known concept of an inter vivos conveyance.[4] The best explanation offered by legal theorists is that insurance is simply an historical exception to recognized legal concepts.

The authorities uniformly hold that payment of the proceeds of a life insurance policy upon the death of the insured is not a testamentary disposition by decedent. In a long line of cases our Supreme Court has held that the mere naming of a beneficiary on a life insurance policy, where the right to change the beneficiary is reserved, is not such an act as will create a vested right to the policy, or its proceeds, in the beneficiary; the beneficiary acquires thereby a mere expectancy or inchoate interest. Thus in Bayer's Estate, 345 Pa. 308, 314, the court said:

". . . We are, of course, now considering contracts in which the right to change the beneficiary has been reserved, because such beneficiary has no vested interest in the policy or its proceeds during the insured's lifetime, but only an expectancy. See [cases cited]."

When the insured dies the named beneficiary then acquires a vested right in the net proceeds of the policy. This right is subject, of course, to the claims of any assignee for consideration, but the right which the beneficiary acquires by the insured's death is against the insurer and not against the insured's estate. Thus in Housekeeper's Estate, 10 D. & C. 494, 497, Judge (later Mr. Justice) Stearne stated:

"The principle which excluded the proceeds of life insurance policies or beneficial funds from inheritance

---

[4] Compare similar problems with respect to U. S. savings bonds registered in the "p.o.d." form.

taxation is that such funds have never formed part of the decedent's estate. They do not, therefore, 'pass from' the estate of the insured, but directly from the assets of the insuring companies. After years of experience and the careful compilation of vital statistics, insurance companies are able to determine with reasonable accuracy the life expectancy of any individual at a given age. From this data a premium for insurance is fixed. The policyholder receives an insurance protection upon the payment of the fixed premium. The contract is a cold business proposition which may inure to the benefit of either or both. The named beneficiary's interest is created by the terms of the *contract* itself and not because of the accumulation of moneys paid in by the policy-holder. If the policy-holder happens to die shortly after the purchase of the policy, the beneficiary takes the full amount or face of the policy, which is usually in excess of the total amount of premiums paid in. There are numerous variations in insurance contracts, but the basic principle remains the same."

As we have shown above, a *policy* of life insurance is a peculiar type of property. In determining what effect on such contracts, if any, the legislature originally intended by the Estates Act, we should consider the *business* of life insurance as well. Life insurance as a business has grown to such colossal size in the economic life of America that it has become the object of special legislation in all of the States, as well as the Federal Government. Basically the State laws point toward the protection of the family by preferring the widow and children to the claims of insured's creditors, and by setting up multiple safeguards to protect the premium reserve fund. The Federal Government, in the application of its tax laws and antitrust legislation, has seen fit to treat specially with life insurance. Growth of the life insurance business is directly at-

tributable to prompt payment of claims following the insured's death which, of course, demands absolute certainty in designation of the post mortem payee.

The legislature and the courts having recognized the importance of life insurance in our social structure, it is unlikely that our legislature intended to affect life policies by including the naming of a beneficiary as a conveyance under section 11, with its inevitable consequences of litigation and delay in the payment of claims, even as in the present case. Furthermore, the subject of insurance was not even mentioned in the title nor by specific reference in the body of the act when originally enacted. The specific proscription regarding life insurance policies contained in the 1956 amendment of section 11(*a*), we hold, therefore, was inserted for purposes of *clarification* and not to reverse any changes in the case law such as the widow alleges were made by section 11 originally.

One case decided in the interim supports our holding. Thus Van Roden, P. J., in Auch Estate, 4 Fiduc. Rep. 113 (1954), by refusing to find the accountant liable to decedent's widow for the policy proceeds which had been paid by the insurer directly to a named beneficiary, held in effect, that such proceeds were not assets of decedent's estate and the personal representative did not become responsible for the collection of the same merely by the widow's election to declare them as such assets. Any doubt as to the correctness of our views, however, is removed by reference to the comment of the Joint State Government Commission [5] ap-

---

[5] ". . . In ascertaining the legislative meaning . . . the report of a legislative commission . . . may, if obscurity or ambiguity exists, be considered": Martin Estate, 365 Pa. 280, 283, quoted in Dengler Will, 13 D. & C. 2d 193 (footnote 1). In Tarlo's Estate, 315 Pa. 321, 325, the court said: "The report of a commission appointed to codify the law upon a given subject is entitled to even greater weight than the report of a committee; especially

pended to the exclusory amendment of section 11(*a*) :

"COMMENT—1956 amendment—The last sentence is added to eliminate uncertainties as to the application of this section to life insurance. Lower court opinions which have dealt with the subject give no clear indication of the extent to which Section 11, as drafted in 1947, would have been applied to life insurance. See Auch Est., 4 Fiduc. Rep. 113; Brown Est., 5 Fiduc. Rep. 113."

Simultaneously with the issuance of the widow's citation, decedent's sister (named as beneficiary in the Prudential policy) cited the coëxecutors and William Jay Leon, Esq., who is counsel for the executor-son as well as the widow, to deliver this policy to the sister as the beneficiary named therein. Respondents admit that this policy "was found with other personal property of decedent after his death" and delivered by decedent's son to his counsel who retains the same.

Under section 301(13) of the Orphans' Court Act of August 10, 1951, P. L. 1163, 20 PS §2080.301(13), we have jurisdiction to try title to property found in the possession of decedent or his personal representatives which would, of course, include counsel for the latter. Property in this contract, which has matured by insured's death, is to be distinguished from a right to the proceeds now payable by the insurance company. There is no dispute as to the facts. We hold that the beneficiary last named in the policy has a right to possess the same, and direct Mr. Leon, as counsel for the coexecutor son, to deliver said policy forthwith to Henry A. Frye, Esq., and Robert A. Webster, Esq., counsel of record for Ruth Bjornsgaard, the named beneficiary.

---

is this so where the legislature enacts the exact language of the commission's draft." We understand that there was no change or revision in this subsection during the bill's passage through the legislature.

*Equitable Life Policy #319796*

This policy issued on decedent's life February 18, 1926. Its matured value is $30,952.75. Changes of beneficiary away from insured's wife were made in 1926 and 1941. On January 17, 1952, the beneficiary was finally changed from insured's son to Catherine K. Yardley, business associate, as primary beneficiary, and insured's estate as contingent beneficiary. This policy is in the possession of respondents, who are the insurance company and Catherine K. Yardley, the beneficiary who survived. The widow seeks essentially the same relief as in her petition to recover the Prudential proceeds. The answer of the Equitable Life, after admitting liability in the amount claimed to be due on paid policy, sets up a "Further Defense", presumably in the nature of new matter, in which it avers it is "ready and willing" to pay the fund into court, and suggests that "equitable interpleader proceedings would be the best method of disposing of this controversy."

In its brief, the insurer urges this court to take jurisdiction of the controversy over this policy by way of interpleader and to permit it to pay into court the fund, less such reasonable counsel fees and costs as may be allowed by this court in accordance with the provisions of the Act of May 21, 1943, P. L. 471, 12 PS §583.

For the reasons set forth in our discussion of the petition against the Prudential, we conclude that the prayer of the widow that the change of beneficiary to Catherine K. Yardley on January 17, 1952, be declared null and void must be denied, the death benefits payable under said policy not being assets of the estate of John R. Henderson, deceased, and the prayer for an injunction against the insurer must also be denied. Having arrived at the foregoing conclusion, there is no need for us to pass on the request of the Equitable

Life for an interpleader. Accordingly, we shall dismiss their request pro forma.

### Equitable Life Policy #319795

The maturity value of this policy, which was issued February 18, 1926, is $105,240.15. The chronological facts, as agreed by the parties to be relevant, commence with the execution by decedent of an unfunded revocable insurance trust on February 13, 1952, naming National Bank of Germantown and Trust Company (now Girard Trust Corn Exchange Bank), trustee. Settlor accompanied the execution of this deed with a change of policy beneficiary on February 21, 1952, from his son to the trustee.

As originally written, the deed of trust provided that after settlor's death the trustee should collect the policy proceeds (since collected), invest the same and divide the income between decedent's sister, Ruth Bjornsgaard, and Catherine K. Yardley, with power in the trustee in its discretion to invade principal up to $1,000 each year for each beneficiary. The remaindermen were the sister's issue, if any, or settlor's brothers, or, in default of the foregoing, the employes of Kirk & Nice. On September 4, 1953, decedent provided by amendment that income should be paid equally to his sister and Miss Yardley while they both were living, with all income to the survivor. On death of the survivor, principal was to go one half to the issue of his sister and the other half to the employes of Kirk & Nice. On October 28, 1957, decedent again amended the trust by revoking the dispositive provisions and providing that the income should be paid to his sister and Miss Yardley while both were living, with all to the survivor, and giving each beneficiary an unqualified right to withdraw up to $1,000 of principal a year. On death of the survivor the amendment provided for one half of the principal to be distributed

to his sister's issue, or in default of issue to his only son, the other half of the principal to his son, or if he is not then living, to the sister's issue. In default of any of the above named remaindermen, the entire principal is distributable to employes of Kirk & Nice as determined by the trustee.

The trustee and Miss Yardley filed a joint answer containing new matter in which they admitted the essential averments of fact but denied the widow-petitioner was entitled to the relief which she sought as a matter of law. Separate answers were filed by the guardian and trustee ad litem and by Ruth Bjorns-gaard.

The widow relies heavily on Brown Estate, 4 D. & C. 2d 722, decided by President Judge Copeland of the Orphans' Court of Westmoreland County on February 16 1955, affirmed per curiam (384 Pa. 99) on January 13, 1956. That case involved an unfunded revocable insurance trust dated January 22, 1940, but amended as to its dispositive provisions by supplemental agreement under date of May 3, 1948. Settlor retained control of the insurance policies during his lifetime and the trustee had no authority or obligation during the life of settlor other than acting as custodian of them. Settlor paid all premiums on the policies during his lifetime and reserved the right to change the beneficiary. The court held that the widow was entitled to take one half the trust estate for two reasons: First, the control retained by settlor was such that the trustee was only his agent and therefore the disposition which was intended to take effect after his death was testamentary; secondly, the widow was entitled to consider the trust as a testamentary disposition under the Estates Act because the transfer of the insurance policies to a trustee under the recited circumstances was a conveyance under section 11 of the above act, and by the supplemental agreement of May 3, 1948,

the effective date of the conveyance became subsequent to the effective date of the act, namely, January 1, 1948.

The widow in our case likewise contends that this unfunded revocable insurance trust is testamentary and therefore subject to her election. Our decision would undoubtedly be governed by our Supreme Court's affirmance of Brown Estate were it not for the amendment of the Estates Act on February 17, 1956, which was effective as to all conveyances after April 1, 1956, and the later revisory addition of section 8 which became effective on July 11, 1957, four months prior to the last amendment of his insurance trust by our settlor. These two statutory amendments, as we will show, completely nullify the applicability of Brown Estate to the instant case.

Considering first the ruling in that opinion that an unfunded revocable insurance trust is testamentary at common law, i.e., does not take effect until death, it must follow that the wife had no vested rights in this trust prior to her husband's death. In the light of the Supreme Court's affirmance in Brown Estate, it is idle to speculate as to whether the legislature originally intended to classify life insurance trusts as conveyances under section 11.[6] Regardless of the original intention of the legislature, however, section 8 was passed for the express purpose of "clarifying the status of designations of beneficiaries of life insurance"[7] following the Supreme Court's affirmance. "The most important [purpose of this amendment]", as stated

---

[6] The weight of authority prior to Brown Estate, 384 Pa. 99, was that insurance trusts are not testamentary. See Fidelity Trust Company v. Union National Bank of Pittsburgh, 313 Pa. 467, 489-90; Couch, Insurance (1929-45) §306; Restatement of the Law of Trusts §57(1), comment f; Scott on Trusts (2d ed. 1956) §57.3.

[7] Quoted from the title of this revisory addition to the Estates Act.

by the Commission, "is to make it clear that unfunded insurance trusts are not testamentary and to that extent the law as stated in Brown Estate, 384 Pa. 99, is changed."

This amendment took effect immediately upon its enactment, to wit, July 11, 1957. Settlor was then living. Whatever dower rights or expectancies[8] in this trust his wife had up to that time were taken away as of that date. This change by the legislature was not in violation of any of her constitutional rights. Dower and curtesy rights are acquired through the laws of intestate descent, and in these laws the status of marriage is but one of the several relationships for which provision is made. "Constitutional provisions have no relation to the contract of marriage, and do not affect the right to legislate upon the subject of marriage and divorce, even after the marriage was contracted": Scaife v. McKee, 298 Pa. 33, 38; Bridgeford v. Groh, 305 Pa. 554.

The second holding of Brown Estate is of no greater aid to this widow because soon after the opinion of the lower court was filed, the amendment providing that section 11 of the Estates Act "shall not apply to any contract of life insurance purchased by a decedent whether payable in trust or otherwise" was introduced in the legislature and passed finally on February 17, 1956. This proscription applied "only to conveyances effective on or after" April 1, 1956.[9] Settlor thereafter amended the dispositive provisions of his trust agreement on *October 28, 1957*, and this amendment was undoubtedly a *conveyance after* the effective date of the legislative amendment: Brown Estate, supra,

---

[8] The right of election which the widow had under Brown Estate, 384 Pa. 99, was not a vested right. See discussion of this subject by Mr. Justice Stearne in Crawford Estate, 362 Pa. 458, 464-5. Cf. Conway Trust, 9 D. & C. 2d 385.

[9] Section 5 of the amendatory statute.

at pages 727, 728. Cf. McKean Estate, 366 Pa. 192.

Furthermore, it appears that counsel for the widow has impliedly conceded the applicability of the 1956 amendment. Prior to payment by the insurance company to the trustee, his proper forum would have been the common pleas: Auch Estate, 4 Fiduc. Rep. 113, 118-19. But here respondent trustee has already received the proceeds from the insurer. In selecting as his forum this proceeding, which involves the estate of the deceased settlor, rather than an accounting by the trustee under the trust's term and number, counsel has brought himself squarely within subsection (d) of the 1956 amendment which provides that: "The court having jurisdiction of the *deceased conveyor's estate* shall determine the rights of the surviving spouse in the property included in the conveyance." (Italics supplied.)

We rule [10], therefore, that this court has jurisdiction over the claim of the widow to this trust fund and for the above stated reasons her claim must be denied.

For the above stated reasons we now enter this

## Decree

And now, July 17, 1958, it is ordered and decreed:

1. In re The Prudential Insurance Company of America policy #3,300,947:

(a) The prayer of petitioner, Ethel M. Henderson, that the changes of beneficiary dated March 5, 1925, September 25, 1934, August 21, 1950, and April 28,

---

[10] In so ruling we do not deprecate the argument of the widow's counsel that, because of the tax provision in decedent's will with the possibility of a higher Federal estate tax valuation upon the undertaking business than the fixed $100,000 purchase price, the estate scheme of this decedent may very well result in disinheritance of the widow. Amelioration of such hardships, if real, can best come through further legislation after thorough consideration by the legislature of the manifold complications involved.

1952, be declared null and void as to petitioner is denied, and the proceeds payable as death benefits under said policy are hereby decreed not to be assets of the estate of John R. Henderson, deceased. The request for an injunction against payment of the proceeds of said policy by the insurance company is also denied and the petition is dismissed.

(b) The preliminary objections of The Prudential Insurance Company of America to the foregoing petition are sustained.

(c) The preliminary objections and demurrer of Ruth Bjornsgaard to the foregoing petition are sustained, except that this court does have jurisdiction under section 11(d) of the Estates Act, as amended on February 17, 1956, to determine that the change of beneficiary of April 28, 1952, was not a conveyance within the meaning of section 11(a) of the Estates Act, either before or after the amendment of February 17, 1956.

(d) The prayer of petitioner, Ruth Bjornsgaard, is granted, and William Jay Leon, Esq., is ordered and directed to deliver said policy of insurance forthwith to Henry A. Frye, Esq., and Robert A. Webster, Esq., counsel of record for petitioner, Ruth Bjornsgaard.

II. In re The Equitable Life Insurance Company of Iowa policy #319796:

(a) The prayer of petitioner, Ethel M. Henderson, that the change of beneficiary dated January 17, 1952, be declared null and void as to petitioner is denied and the proceeds payable as death benefits under said policy are hereby decreed not to be assets of the estate of John R. Henderson, deceased. The request for an injunction against payment of the proceeds of said policy by the insurance company is also denied and the petition is dismissed.

(b) The questions of law raised by new matter in the answer of Catherine K. Yardley, beneficiary, are

dismissed pro forma, inasmuch as they were not pressed before us.

(c) The request for an interpleader contained in the answer of The Equitable Life Insurance Company of Iowa, is denied pro forma.

III. In re The Equitable Life Insurance Company of Iowa policy #319795:

(a) The prayer of petitioner, Ethel M. Henderson, that the deed of trust dated February 13, 1952, with its two amendments and the change of beneficiary dated February 21, 1952, be declared null and void as to her is denied and the property held by the Girard Trust Corn Exchange Bank, trustee under said deed of trust is expressly decreed not to be assets of the estate of John R. Henderson, deceased. The request for an injunction against the said Girard Trust Corn Exchange Bank, trustee, is also denied and the petition is dismissed.

(b) The question of law raised in the joint answer of the Girard Trust Corn Exchange Bank, trustee, and Catherine K. Yardley, life beneficiary, under the heading of new matter, are dismissed pro forma, as they were not pressed before us.