## DeVenuto Estate

*George C. Corson, Jr.*, of *Wright, Spencer, Manning & Sagendorph*, for appellants.

*Richard N. Spare*, for Commonwealth.

TAXIS, P. J., December 29, 1964.—In the transfer inheritance tax appraisement filed in this estate, the Commonwealth included as taxable under the Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, the commuted value of certain monthly annuity payments due decedent's widow, under the Consolidated Employees' Retirement Plan of Girard Trust Corn Exchange Bank. This appeal from that determination was taken by the Girard Trust Bank, formerly known as Girard Trust Corn Exchange Bank, which is the named executor in this estate.

Mr. DeVenuto was employed by the said bank in its safe deposit department from September 21, 1925, until his retirement, at age 65, on October 31, 1958. At his retirement, he commenced to draw monthly payments of $368.56 under the retirement plan, which sum, by his election, was to be paid for a period of 120

months or for his life, whichever was longer. Decedent, however, drew only 35 monthly payments prior to his death on September 8, 1961, and the remaining 85 payments thereby became payable directly to his wife by his designation of her as his beneficiary. The commuted value of these payments at decedent's death is claimed by the Commonwealth to be taxable.

Early in his employment, decedent had made total contributions of $881.51 to a prior pension plan, but other than that all contributions were made by the bank. The present plan was adopted on June 15, 1952, and all contributions made to it were by the bank. Under the plan, such contributions were the property of the bank in its capacity as trustee, and were invested by it in a group annuity contract with the Equitable Life Assurance Society of the United States. All of the right, title, and interest in that contract is owned, and has always been owned, by the bank as trustee.

Decedent's relevant rights under the plan may be summarized as follows:

1. At retirement, he became entitled to receive an annual retirement income for life or for certain longer periods at a reduced rate, subject to his election.

2. He had a right to name a contingent beneficiary, in case of an election to receive benefits after his death, but in the absence of such a beneficiary, remaining benefits would be payable in turn to his widow, children, parents, brothers and sisters, or his estate.

3. Termination of employment prior to retirement resulted in the loss of all benefits, except that one who was a member of the plan for ten or more years, or an employee of the bank for 20 or more years, became entitled to certain benefits at retirement age.

4. Contributions by an employe to the prior plan were repaid the contributor immediately after retirement, by the process of treating initial retirement

benefits as reimbursement of such contributions and not as credits against the employe's rights under the existing plan.

5. No rights to benefits, except such as represented actual contributions by the employe to the prior plan, survived the employe's death prior to retirement, and if this latter event occurred, all contributions made on his behalf were credited *to the bank* against its future contributions to the trust.

6. A standard spendthrift clause rendered unassignable and unattachable any and all rights of members.

7. The bank had the right to terminate the plan at any time, and did not guarantee any benefits.

8. No member had any interest in or right to any of the assets of the trust except as specifically given him by the plan, and there was no right to withdraw or borrow any such assets, or in any way to anticipate benefits.

The applicable statute is section 1 of the Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, as amended, 72 PS §2301. Insofar as relevant, that act provides:

"That a tax shall be, and is hereby, imposed upon the transfer of any property, real or personal, or of any interest therein or income therefrom, in trust or otherwise, . . .

"(c) When the transfer is of property made by a resident, . . . by deed, grant, bargain, sale or gift, made in contemplation of the death of the grantor, vendor, or donor, or intended to take effect in possession or enjoyment at or after such death."

The principal issue here is whether decedent's death before payment of the minimum benefits due under his retirement plan resulted in a "transfer of property" within the meaning of the aforesaid statute. It is appellant's initial position that the "property" referred to in the statute means the *decedent's* prop-

erty, and this is clearly correct: Glosser Trust, 355 Pa. 210 (1946). The overall statutory intention in this regard is further demonstrated by the exemption from taxation of life insurance proceeds, which are the property of the company and not the insured, and of appointive property in the estate of the donee, which continues to belong to the donor but passes by the act of his agent.

Did the decedent, then, have any property interest in this plan at his death? A study of the cases cited by the parties to this proceeding is helpful in revealing what the courts of Pennsylvania have found to be such a taxable property interest. Dorsey Estate, 366 Pa. 557 (1951), was concerned with the Profit Sharing Pension Fund of Sears, Roebuck & Company. It held as taxable to the estate of the decedent that portion of the fund represented by contributions of the company, the portion attributable to the employee's contribution being admittedly subject to tax. The Supreme Court, at page 561, found that the company's contributions were the property of the employee ". . . in view of the depositor's right to withdraw in his lifetime the total amount of the fund credited to him or to make full disposal of it at the time of his death . . ." In reference to the right of decedent to denominate a beneficiary, it was also said, at page 559: "It is the contention of appellant that in designating her (decedent's wife) as beneficiary decedent was merely exercising a power of appointment over that portion of the share of the fund credited to him which represented contributions by the Company. Such a contention would be valid only if the Company's contributions continued to be owned by the Company and not by decedent, because obviously a power of appointment can exist only with reference to another's property and not one's own."

In Hoelzel Estate, 101 Pitts. L. J. 77 (1952), an

employer purchased an annuity contract for its executives, and transferred it to them, absolutely, in their individual capacities. The refund value of this contract at death was held a taxable asset of the estate of one of the transferees, because ". . . the absolute and exclusive ownership . . . was vested in the annuitant . . ." While the decedent had the right to name or change contingent beneficiaries during his lifetime, the contract was a taxable asset of his estate not because of this, but simply because he owned it absolutely.

Cameron Estate, 15 D. & C. 2d 557 (1958), presented an unusual situation. A majority of the Orphans' Court of Allegheny County found that the value of a deferred compensation contract between decedent and his employer was an asset of his estate for inheritance tax purposes. There was no pension or retirement plan involved, but only a single contract to enable Mr. Cameron to spread income over a ten-year period. The contract further provided that if Mr. Cameron did not survive this period, then his benefits were to go to his widow if living or to his executors and administrators. Such provisions were alterable "by amendment." The court held after discussion that Mr. Cameron could have assigned the contract during his lifetime, and that it was in effect an annuity for a guaranteed period, owned by decedent at his death.

An able dissent took the position that the matter could not be distinguished from Burke and Enbody Estates, 3 Fiduc. Rep. 344 (1953), [to be discussed below], and in which no tax liability was found. The principal basis of the dissent, however, was not a difference of opinion as to the rule of law involved, but only a different view of the rights in the contract possessed by decedent at his death. The dissenting judge believed that decedent had no power to assign the contract to the detriment of the rights of his widow

after his death, nor did he accept that the contract permitted unilateral designation of a different beneficiary, since under basic rules of law contracts may be "amended" only with the consent of all parties thereto. Under this view decedent had no rights in the contract which extended beyond his death, and the dissenting judge therefore held that he had no property interest in the contract and that it should not be taxable to his estate.

In Eastlack Estate, 16 D. & C. 2d 725 (1959), there was a profit sharing trust to which the employer contributed a portion of its net profits. These were then allocated to separate accounts for each participating employe, of which decedent was one, according to a formula. Benefits from the fund were payable in the event of ". . . total disability, death, resignation or discharge . . ., or upon retirement at age sixty-five." There was a provision for the designation of a beneficiary to receive benefits not paid to the employe during his life. There was a spendthrift clause, and also a provision for the loss of the employe's interest in case of discharge, but only for substantial cause. The Orphans' Court of Philadelphia County determined, citing Dorsey Estate, supra, that Mr. Eastlack's rights amounted to substantial ownership of his entire allocated share of the fund, and that in transferring it to his named beneficiary at his premature death, he transferred his property, and not the property of another person.

An earlier case cited by the Commonwealth is Bayer's Estate, 345 Pa. 308 (1942). There, decedent at his death was the annuitant of several single premium annuity contracts, in which the issuing companies agreed to pay to the annuitant and, if necessary, his beneficiary, a sum at least equal to the amount of the premium. Decedent did not receive such a sum in his lifetime, and the issue raised was the taxability to

his estate of the amounts which the companies were obligated to pay to his beneficiary. The principal issue raised, however, was whether or not these proceeds were free from tax under the language of the Inheritance Tax Act exempting proceeds of policies of life insurance, and the court held that they were not. There was no detailed discussion, apparently because the question was not raised, concerning *whose* property was transferred at decedent's death, but there is nothing in the opinion of the Supreme Court to negate the necessary inference that it was decedent's, and not the companies.' This result follows reasonably, for the contracts were purchased by decedent, and, more important, the ownership of any and all rights which they conferred was necessarily in him alone, and not in a third party, as in the case now before me. Bayer's Estate, therefore, is certainly determinative of the taxability of the refund feature of annuity contracts, and is apparently still the law; but the significant differences between the property interests of a private annuitant on one hand and the beneficiaries of the Girard Trust Retirement Plan on the other make the analogy unconvincing in the light of logic and persuasive contrary authority.

The facts of the present case render it akin to Enbody and Burke Estates, supra. Both of these cases arose in Philadelphia County at about the same time, and are reported together. Both involve retirement plans to which the employer made all contributions. In both, the decedents retired with a minimum number of monthly payments guaranteed, but which were not paid because decedent failed to survive. Neither decedent had any rights in his plan during his lifetime, as neither had any particular fund assigned to his credit, nor could he borrow on, assign, or anticipate benefits; and in both cases the ownership of the fund was in its trustee entirely.

The Commonwealth argued, as it does here, that the right to designate a beneficiary alone resulted in the transfer of a substantial property interest to another person. But this by itself is not enough to create a tax liability. In Burke Estate, the auditing judge said this, at page 352: "It is clear, therefore, that the benefits from the Basic Fund do not represent property belonging to an employe or assets which he can claim. Decedent neither possessed nor controlled any part of the Basic Fund. Possession, control, and dominion are fundamental elements of ownership of property. Consequently, there was no transfer of *decedent's* property to beneficiary."

More explicit, perhaps, was the language in Enbody's Estate, at page 358: "The difficulty with the Commonwealth's claim is that it confuses ownership of the fund with the right to designate the beneficiary of it. Conceding that decedent had the absolute right to designate the beneficiary of the fund, she did not by exercising that right transfer her own property to the beneficiary. She did not own the fund over which she exercised the right, nor did she have the power to acquire it.

"The transfer taxed by the statute is of property *owned* by a decedent and not the property of another."

The court then proceeded to conclude, by way of analogy, that decedent had a power of appointment, and that accordingly the tax consequences of her exercise of it were governed by the law applicable to that type of transaction.

The Attorney General of Pennsylvania adopted substantially the reasoning set forth here, in his advisory opinion reported at 6 Fiduc. Rep. 93 (1955). This opinion was rendered in reference to the profit sharing plan of the Edward K. Tryon Company which, from the aspect of ownership, was much like the plan in Eastlack Estate, supra. If anything, the plan was even

more definitive of property rights, for it specifically provided that ". . . each member's interest in the contract purchased for his benefit shall be fully vested at once." Although the Tryon plan required retirement or separation in order to receive benefits, this was regarded as nothing more than a condition precedent to their payment, not affecting the vested right to receive them. The opinion at page 96 distinguished Enbody and Burke Estates, I think correctly, by saying, "There was no provision in those funds for a vested or property interest in the respective trusts . . ." In the Tryon case, decedent had not retired at his death, and consequently all of his benefits passed to his beneficiary, but his property rights in the fund were not lessened thereby, for, as the attorney general points out at page 95, he ". . . could have retired at any time and received either in cash or in installments the amount standing to his credit in the profit-sharing trust."

It thus appears that the contention that a right to designate a beneficiary, without more, results in taxability is not supported by authority. It is true that Enbody and Burke Estates were not taken to the appellate court, and hence are only advisory to me at present; but their reasoning, when allied with other available authority, is most persuasive. It is axiomatic that a taxing statute must be construed strictly and against the taxing authority, in case of doubt as to its meaning; that is there must be a clearly expressed legislative intent to tax the transaction or the subject matter under consideration. In addition, the Inheritance and Estate Tax Act of June 15, 1961, P. L. 373, sec. 316, 72 PS §2485-316, covers the present situation in specific statutory language, and would exempt the present fund from tax. It is quite safe to hold, however, even apart from the above considerations, that the value of the fund passing to Mrs. DeVenuto is not

taxable under language of section 1 (c) of the Transfer Inheritance Tax Act of 1919.

### Order

The appeal is sustained, and the commuted value of the payments due decedent's widow under the Consolidated Employes' Retirement Plan of Girard Trust Corn Exchange Bank is stricken from the inheritance tax appraisement.