## In re Estate of Lesko

C.P. of Cambria County, no. 11-03-01058.

*Joseph D. Messina,* for petitioner.
*Laverne M. Kovacs,* for Department of Revenue.

SWOPE JR., *J.,* November 24, 2004—This matter is before the court as a result of an appeal of decision and order of the Commonwealth of Pennsylvania, Department of Revenue assessing inheritance tax filed by the

petitioner. A hearing on this matter was held on October 25, 2004, at which time the court considered legal arguments by counsel, and both parties subsequently filed memorandums.

## FACTUAL SUMMARY

The petitioner, Violet Drager, is the executrix of the estate of Dorothy M. Lesko, who died on November 7, 2003. The petitioner was appointed executrix of Ms. Lesko's estate by the Register of Wills of Cambria County, Pennsylvania on November 26, 2003. At the time of her death, Ms. Lesko's assets included two annuities: Ohio National Life Insurance Company annuity, policy no. ********, with a date of death value of $34,000, and American General annuity, policy no. VP******, with a date of death value of $73,259.81.

The petitioner contends that she accounted for the said annuities in the inheritance tax return, which was filed for Ms. Lesko's estate, and declared them exempt for inheritance tax, because Ms. Lesko set them up for the purpose of receiving future payments and she had designated beneficiaries for each plan. At the time of her death, Ms. Lesko had not received any monthly payments from the annuities. The petitioner contends that under the Commonwealth's inheritance tax regulations, the right to receive monthly payments under the plan and the right to designate beneficiaries do not subject the annuities to inheritance tax.

On March 8, 2004, the Department of Revenue issued an appraisement and assessment, which imposed tax on the date of the death value of the said annuities. The pe-

titioner then requested an administrative review of the assessment. On September 8, 2004, the Department of Revenue issued a decision and order, which denied the petitioner's protest and affirmed the department's appraisement and assessment that the annuities were taxable. The brief two-page decision provided in part:

"Section 2111(r) of the Inheritance and Estate Tax Act of 1991 excludes payments under retirement plans including, but not limited to, individual retirement annuities from inheritance tax to the extent the decedent did not before her death have the right to possess, enjoy, assign or anticipate the payments made. This section is implemented through a regulation, which provides that a plan is subject to inheritance tax if the decedent possessed the '. . . right to withdraw the benefits, including the right to withdraw only upon payment of a penalty or additional tax if the penalty or additional tax is smaller than 10 percent of the withdrawal.' 61 Pa. Code §93.131(d)(2)(i)(A).

"At the time of decedent's death, a 6 percent and a 9 percent withdrawal penalty would have applied to Ohio National Life Insurance Co. and American General annuities respectively. As decedent therefore had the right to possess the funds, the annuities are fully taxable."

The petitioner contends that the said annuities are not subject to inheritance tax, because the inheritance tax regulations provide that either the right to designate beneficiary or the right to receive monthly payments under the plan either alone or together do not subject the annuity to inheritance tax, that Ms. Lesko at the time of her death had not received any monthly payments from the annuities and had no intention to withdraw their ben-

efits, and the Department of Revenue's position that Ms. Lesko had the right to possess the funds was insufficient based upon the structure of the annuities in this case to impose the tax.

At the hearing on this matter, and in both parties' subsequent memorandums, the Department of Revenue has now conceded that section 2111(r) of the Inheritance and Estate Tax Act of 1991 is inapplicable to this matter. However, the Department of Revenue still insists that the annuities are not life insurance policies, and therefore are not exempt from Pennsylvania inheritance tax. The petitioner counters that the annuities are exempt life insurance policies, and that the intent of Ms. Lesko was to purchase the annuities as a long-term investment by payment of a single premium and that she never had an intention to withdraw the principal.

## DISCUSSION

The issue for the court to decide in this matter is whether the two annuities in question are exempt from Pennsylvania state inheritance tax. In order to determine the said issue, the court must examine whether these "annuities" are actually "annuities" in a legal sense as set forth by our Commonwealth's appellate courts, or if these "annuities" are actually "life insurance" as alleged by the petitioner, which would make them exempt from the inheritance tax.

The court begins by noting the late Justice Stern's definition of an "annuity":

" 'Annuity' is a term somewhat loosely used in financial and legal nomenclature and is perhaps incapable of

exact definition. Generally speaking, it designates a right—bequeathed, donated or purchased—to receive fixed, periodical payments, either for life or a number of years. Its determining characteristic is that the annuitant has an interest only in the payments themselves and not in any principal fund or source from which they may be derived." *Commonwealth v. Beisel,* 338 Pa. 519, 521, 13 A.2d 419, 420-21 (1940). (footnote omitted) See also, *Dwight Estate,* 389 Pa. 520, 134 A.2d 45 (1957), and more recently, *Unisys Corporation v. Pennsylvania Life and Health Insurance Guaranty Association,* 667 A.2d 1199, 1202 (Pa. Commw. 1995).

There are numerous types of annuity contracts purchasable. "The attributes of an annuity contract in Pennsylvania are separate and distinct from those of insurance contracts. In the case of ordinary annuities, nothing remains to pass at the annuitant's death. However, if the parties contract that if the annuitant die before receiving the total the balance shall pass to his beneficiary, there is a transfer of property at the instant of death." *In re Harrison Estate,* 42 D.&C.2d 247, 249 (1966), quoting *St. Pierre v. Heim,* 39 Erie 166, 173.

In determining the status of the annuities in the present matter, this court is guided most by Justice Jones' decision in *Estate of Dwight,* 389 Pa. 520, 134 A.2d 45 (1957). In *Dwight,* Justice Jones provided orphans' courts with a thorough summation of the law of annuities, which stands to this day. To begin, Justice Jones noted, "The term 'annuity' is difficult of definition. The classic definition of an 'annuity' is that of Sir Edward Coke: 'Coke, whose definition has, substantially, been adopted by all the text writers (2 Blacks. 40; 3 Kent, 460; Addison on Contracts,

982; 2 Williams on Executors, 885 [et seq.;]) says (Co.Litt., 144 b.), "an annuity is a yearly payment of a certain sum of money granted to another in fee for life, or years charging the person of the grantor only" ': *Bayard's Estate,* 7 DR. 279, 281." *Estate of Dwight,* 389 Pa. 520, 525, 134 A.2d 45, 48 (1957).

Justice Jones also noted the difficulty in defining the term "annuity":

"One of the difficulties encountered in defining an 'annuity' is the fact that the meaning of the word is so often confused with the method or source of its payment. Adopting the definition that an 'annuity' is a right 'to receive fixed periodical payments, either for life or a number of years' it does not necessarily follow that *every* 'annuity' is payable out of corpus or income in subsequent years in the event that the income for a particular year or years becomes deficient for payment of the 'annuity.' There is no magic in the word 'annuity,' although some courts attach to the definition of an 'annuity' the method for or the source of its payment. Whether a particular bequest is an 'annuity' or a 'gift of income' may be determinative of the quantum of the bequest, yet only a construction and interpretation of the will or the trust will decide the manner of payment of the bequest in the event that the income becomes deficient for the purpose." *Estate of Dwight,* 389 Pa. at 526, 134 A.2d at 48-49. (footnote omitted) (emphasis in original)

More importantly, Justice Jones noted that the use of the word "annuity" to describe a certain contract does not in and of itself mean that that contract is indeed an "annuity" as defined in a legal sense, but rather, the court should focus on the donative intent of the settlor or tes-

tator of the "annuity" to determine what the contract actually is. As Justice Jones provided:

"The fact that a testator or settlor uses the word 'annuity' in a will or trust is of great significance in determining the intention of a testator or settlor and whether a particular bequest was intended to be a 'gift of income' or an 'annuity': *MacMackin Estate,* 356 Pa. 189, 192, 193, 51 A.2d 689 [(1947)]; *Pusey Estate,* 370 Pa. 572, 577, 88 A.2d 750 [(1952)]; *Elmore Estate,* 379 Pa. 155, 156, 108 A.2d 803 [(1954)]. However, in the face of a contrary expression expressed in the will or trust, the mere use of the word 'annuity' should not be controlling in the determination of the source or manner of its payment.

"The right of a legatee—whether he be an annuitant or the recipient of a gift of income—to have an income deficiency made good out of the corpus of a fund does not depend upon any rule of law, but rather upon the intent of the settlor or testator gleaned from the will or trust provisions and his relationship to the objects of his bounty. In *In re West,* 1 Ir. 75, it was said: *'The question is always a question of intention.* Numerous cases have been referred to, and in this great mass of authority scarcely any settled principles have been arrived at. In nearly every case the decision has turned upon the special words used and the connection in which they occur, affording no light whatever in cases where the words used are different or used in a different connection. What few principles are arrived at are subject to exceptions so numerous and so minute as to be scarcely recognizable as principles at all.' The solution of the problems presented upon this appeal does not require that we give a

'name' to Mrs. Harris' bequest." *Id.* at 526-27, 134 A.2d at 49. (emphasis added) (footnote omitted)

Before examining the "intent" of Ms. Lesko in regards to the annuities as required by Justice Jones, the court also finds that it is prudent to briefly examine the appellate court's definition of "life insurance" as it compares and contrasts to the definition of an "annuity." The long recognized distinction between the two classes of contracts has a basis in fact. *Bayer's Estate,* 345 Pa. 308, 312, 26 A.2d 202, 204 (1942). The court in *Bayer* referenced Justice Read's holding in *Elliott's Executors' Appeal,* pertaining to the distinction between these two types of contracts:

"But 'the contract commonly called life assurance, when properly considered, is a mere contract to pay a certain sum of money on the death of a person, in consideration of the due payment of a certain annuity for his life; the amount of the annuity being calculated in the first instance, according to the probable duration of the life; and when once fixed it is constant and invariable. The stipulated amount of annuity is to be uniformly paid, on one side, and the sum to be paid in the event of death is always (except where bonuses have been given by prosperous offices) the same on the other. This species of insurance in no way resembles a contract of indemnity.' [*Elliott's Executors' Appeal,* 50 Pa. 75, 80-81 (1865)]." *Bayer's Estate,* 345 Pa. 308, 312-13, 26 A.2d 202, 204 (1942).

Justice Stern referred to life insurance as follows:

"Life insurance is an agreement to pay, to a person indicated, a certain sum upon the death of the insured;

the endowment provision adds thereto a contract to pay to the insured himself a specified sum provided he lives to a certain age. Life insurance is for protection against the adversity of death; endowment is based upon the contingency of survival, and is essentially a form of investment." *Industrial Life Insurance Co. v. Hunt,* 335 Pa. 305, 307, 6 A.2d 781, 782 (1939).

Finally, in comparing the definition of life insurance and annuities, the court relies on the Supreme Court's holding from *Bayer:*

"Comparison of the definitions of life insurance and of annuities shows obvious differences between these two classes of contracts. If, with these definitions in mind, the simple life insurance contract is contrasted with the traditional annuity contract, it will be observed that, in the case of life insurance, for annual premiums payable to the company (which in effect are annuities paid by the insured) the company will pay a specified sum at the insured's death; whereas the converse is true of the annuity contract, for, in that transaction the annuitant pays the single sum in consideration of which the company makes annual payments to him. The amount paid on the insurance policy at the insured's death pursuant to the obligation created in his lifetime, is a transfer of property vesting in possession or enjoyment at his death and would be subject to the inheritance tax but for the exemption in clause (d)." *Bayer's Estate,* 345 Pa. 308, 313-14, 26 A.2d 202, 205 (1942).

In *Bayer,* the Supreme Court reversed a decision of the Orphans' Court of Erie County, which found to be tax-exempt from inheritance tax the amount of

$37,080.84 from certain single premium refund annuity contracts left by the decedent to the beneficiary. In reversing the lower court, the Supreme Court held:

"[I]f the parties to the annuity contract provide, as in this case, that a specified total shall be paid in annual installments but if the annuitant die before receiving the total, the balance shall then pass to his beneficiary, there is a taxable transfer of property because the beneficiary's right does not vest until the annuitant's death and the property transferred, not being the proceeds of policies of life insurance within clause (d), is not within the exemption." *Bayer* at 314, 26 A.2d at 205.

Therefore, in light of the Supreme Court's decisions in *Bayer* and *Dwight,* the court must determine whether the two annuities in question were either "annuities" or indeed "life insurance" which would make them tax exempt from the Pennsylvania state inheritance tax. In order to make that determination, the question for this court to decide as guided by Justice Jones' holding in *Dwight,* is what was the *intent* of Ms. Lesko in regards to the two annuities? Counsel for the petitioner, through testimony presented at the October 25, 2004 hearing, contends that Ms. Lesko had no intention to withdraw the principal from these policies during her lifetime, and that these policies were purchased as a long-term investment by payment of a single premium. In fact, counsel for the petitioner states that these annuities are in the nature of life insurance.

In consideration of the petitioner's position, the court has examined the annuities. Regarding the annuity from the Ohio National Life Insurance Company, the court notes that the annuity's payout date, or in other words,

the first day that payments will be made, is August 1, 2012, nearly 10 years from now. The date the said annuity was purchased was July 18, 2002, when Ms. Lesko was 83 years old, and in declining health. Similarly, the court finds that the annuity from American General was purchased when Ms. Lesko was 82 years old, and the payout date would not be until 2007. Hence, both annuities at the time of Ms. Lesko's death had not paid out any funds to her, and in fact, would not be paying any funds for at least five to 10 years from now when she may very well have known that she may have passed away by that time.

In light of this review, the court finds that it was Ms. Lesko's intention to purchase these "annuities" as a form of life insurance. The record shows that Ms. Lesko purchased these annuities in such a manner that she would have never realistically received any payment from them. Though these contracts may have been called "annuities," they were not purchased or created in a form that would constitute a traditional annuity as defined by Justice Jones. As such, these policies are exempt from Pennsylvania state inheritance tax. The court notes that if payments had been made from the annuities to Ms. Lesko during her lifetime, and at the time of her death, the balance transferred to her beneficiary, then the balance remaining would be subject to inheritance tax, because the annuities would have been an income producing contract. Such was not the case, as these contracts were created through the intention of Ms. Lesko to be life insurance whose financial benefits would not be enjoyed until after her death. Therefore, the annuities in question are exempt from the Pennsylvania state inheritance tax.

Accordingly the following order is entered:

ORDER

And now, November 24, 2004, it is hereby ordered and decreed that the petitioner's appeal is sustained, and the assessment by the Department of Revenue of inheritance tax on the two annuities identified in this appeal as Ohio National Life Insurance Company, annuity policy no. ******** and American General annuity policy no. VP****** is reversed, and the said annuities are *not* subject to Pennsylvania state inheritance tax for the reasons set forth in this decision.